1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

SHAY LAPS,                                        Case No. 25-cv-05767-SVK

8

                          Plaintiff,

9                                                 **ORDER GRANTING IN PART
          v.                                      AND DENYING IN PART
10                                                DEFENDANTS' MOTION TO
                                                  DISMISS CLAIMS 12 AND 14**
          THE LELAND STANFORD JUNIOR
11        UNIVERSITY, et al.,                     Re: Dkt. No. 32

                          Defendants.

12

13            Plaintiff Dr. Shay Laps ("Dr. Laps") filed this action against the Leland Stanford Junior

14    University ("Stanford") and Dr. Danny Hung-Chieh Chou ("Dr. Chou") (the latter two

15    collectively, "Defendants") alleging discrimination on the basis of Dr. Laps' religion, national

16    origin and ethnicity. *See* Dkt. 1 ("Complaint"). Before the Court is Defendants' joint Motion to

17    Dismiss claims 12 and 14 of the Complaint, which allege Defamation against Dr. Chou and

18    Discrimination under California Education Code Section 220 against Stanford, respectively. Dkt.

19    32 ("Motion"); Compl. at 69-71, 73-74. The Court determines that the Motion is suitable for

20    resolution without oral argument. *See* Civil L.R. 7-1(b). All Parties have consented to magistrate-

21    judge jurisdiction. Dkts. 19, 26. Having considered the Parties submissions, the relevant law and

22    the record in this action, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

23    **I.    RELEVANT BACKGROUND**

24            Dr. Laps' Complaint includes hundreds of paragraphs of allegations relating to his

25    discrimination claims broadly and to specific causes of action. *See id.*, ¶¶ 1-12, 25-187 (general

26    allegations), 188-368 (allegations as to specific causes of action). For the purposes of resolving

27    the Motion, the Court sets forth the general background briefly but focuses its attention on the

28    allegations relevant to Claims 12 and 14. For the purposes of resolving the Motion, the Court

takes the factual allegations of the Complaint as true.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.").

### A.    The Parties, and Dr. Laps' Appointment as a Postdoctoral Scholar at Stanford

Dr. Laps is a Jewish, Israeli chemist who obtained his Ph.D. from the Technion-Israel Institute of Technology in 2021.  Compl., ¶¶ 2, 18, 25-28.  After receiving various awards in the field of chemistry and completing a number of fellowships in his area of specialty (peptide and protein chemistry, specifically with applications related to insulin), Dr. Laps developed an interest in Dr. Chou's lab at Stanford and applied for a postdoctoral position at Stanford.  *Id.*, ¶¶ 28-31.

Stanford is a private university located in California that receives both federal and state funding, including in the form of federal research grants.  *See id.*, ¶¶ 13-15, 344.

Dr. Chou is a tenured Associate Professor at Stanford and the leader of a lab (the "Chou Lab"), "which, among other things, seeks to develop new methods of peptide and protein synthesis and the development of glucose-responsive 'smart' insulin."  *Id.*, ¶¶ 16-17.  In addition to Dr. Chou, the Chou Lab was "comprised of four postdoctoral fellows, two research/administrative assistants, one PhD student, and intermittently, a visiting MSc student."  *Id.*, ¶ 46.

Dr. Laps applied to the postdoctoral position and was interviewed by Dr. Chou and other members of the Chou Lab prior to the events of October 7, 2023.  *Id.*, ¶ 31.  On that date, Hamas, a designated foreign terrorist organization, "attacked 21 Israeli towns, recreational beaches, an open-air music festival, and police and military outposts by land, sea, and air," killing about 1,200 people and taking 250 hostages.  *Id.*, ¶ 35; *see* U.S. State Dep't, List of Foreign Terrorist Organizations, *available at* https://www.state.gov/foreign-terrorist-organizations.  "Approximately three weeks later, on October 27, 2023, Israel deployed ground forces that marked the beginning of a large-scale war" in the Gaza Strip.  Compl., ¶ 35.  Around that time and in the months following, various protests and rallies took place in the United States especially, as relevant here, on the campuses of universities in this country including Stanford.  *See id.*, ¶¶ 36-39.  As alleged by Dr. Laps, "many of those protests and rallies … did not protest the massive Hamas attack on humanity, or rally to the causes of comity and goodwill; they protested the existence of the State

of Israel." *Id.*, ¶ 36.

Dr. Laps received an offer of appointment as a postdoctoral scholar in the Chou Lab on or around January 25, 2024. *Id.*, ¶ 32. He accepted the offer at the end of January 2024. *Id.*, ¶ 34.

### B.    Dr. Laps' Experience of Stanford; Events Underlying the Defamation Claim

"Dr. Laps arrived at Stanford on April 1, 2024 to begin his postdoctoral work at the Chou Lab." Compl., ¶ 45. Dr. Laps felt "from the moment he arrived at Stanford that the campus was a tinderbox" after the October 7 attack, but hoped the situation would improve. *Id.* Dr. Laps alleges that Dr. Chou "had circulated Dr. Laps' CV to the lab prior to his start date," and that the other members of the Chou Lab were aware of his status as a Jewish-Israeli and his service in the Israeli Defense Forces ("IDF"). *Id.*, ¶ 47. Dr. Laps alleges that he encountered immediate hostility from one of the research assistants in the Chou Lab as well as others he encountered around the Stanford campus, although his relationship with Dr. Chou, as his mentor, "beg[a]n strong." *See, generally*, ¶¶ 48-78.

On or around July 31, 2024, Dr. Laps alleges that he wrote to Dr. Chou about the hostility Dr. Laps was feeling, particularly friction between him and the research assistant. *Id.*, ¶ 80. On August 26, 2024, "Dr. Chou called Dr. Laps into his office for an 'urgent' meeting" wherein Dr. Chou "told Dr. Laps that the Stanford Title IX office had notified Dr. Chou that a serious complaint of sexual harassment had been made against Dr. Laps and that a Title IX investigation into Dr. Laps was now ongoing." *Id.*, ¶ 82. Dr. Laps was "aghast by the alleged harassment complaint," denied it and stated that the matter ought to be "thoroughly investigated," declining Dr. Chou's alleged offer to "resign quietly." *Id.*, ¶¶ 83-85. Based on subsequent events and Dr. Laps' efforts to follow up with Stanford's Title IX Office, he alleges that "there was no such Title IX Complaint from [Jane] Roe, and no one asked Dr. Chou to convene such a meeting." *Id.*, ¶ 86-87[1]; *see also id.*, ¶¶ 88-93, 98-101. Dr. Laps alleges that "Dr. Chou's claims about a Title IX

---

[1] Consistent with the Protective Order in this case, specifically the Court's order regarding redaction and the use of pseudonyms, and in order to protect the identities of third parties, the Court adopts the Parties' practice of referring to the undergraduate student from whom the disputed complaint originated as "Jane Roe." The Court notes that all Parties are aware of the individual's full name.

United States District Court
Northern District of California

complaint … create a whirlwind of rumor around Dr. Laps," and thus alleges on information and belief that "Dr. Chou also made oral and/or written statements to Stanford staff and administrators claiming that Dr. Laps had committed sexual harassment." *Id.*, ¶¶ 176, 318-22.  Dr. Chou's claims about the disputed Title IX complaint form one of two bases upon which Dr. Laps alleges defamation.  *See* Dkt. 37 at 11-12 (citing to paragraphs 10, 100, 176, 318-22, relating to the Title IX "scheme" as one basis for defamation) (collectively, the "Title IX Defamation Allegations").

On October 25, 2024—after Dr. Laps had looked into the disputed Title IX complaint and after he submitted complaints of antisemitism/discrimination to Stanford—Dr. Laps was called into a meeting by Dr. Chou and told that he would be "a better 'fit' at a different lab."  Compl., ¶¶ 111-12.  As he came to believe that he had been or shortly would be dismissed, on October 26, 2024, Dr. Laps escalated the situation to the Office of the Stanford President, rejecting "the attempt to terminate his position in the [Chou] Lab" and requesting "that Dr. Chou affirmatively find an alternative that left Dr. Laps no worse off." *Id.*, ¶¶ 114, 116.  Dr. Chou "responded by immediately deactivating Dr. Laps' badge access and locking Dr. Laps out of the Chou Lab." *Id.*, ¶ 117.  Two days later on October 28, Dr. Chou told Dr. Laps that he should "work from home this week for safety reasons." *Id.*, ¶¶ 118.  Dr. Laps alleges that, from this time and through November 4, 2024, some colleagues at Stanford had "inquired with Dr. Chou about why Dr. Laps was suddenly absent from the Chou Lab" and that Dr. Chou "told at least one Stanford researcher that Dr. Laps' absence was due to a 'legal licensing' issue with Dr. Laps' work and that Dr. Laps would not be returning." *Id.*, ¶ 121.  Such allegations—specifically that Dr. Chou "defamed Dr. Laps to colleagues with outright lies about 'legal licensing'" issues that would lead them to believe "that Dr. Laps [had] committed some type of intellectual property infringement" form the second basis for Dr. Laps' allegation of defamation.  *See* Dkt. 37 (citing to paragraphs 11, 121, 315-17 and 325 as another basis for defamation) (collectively, the "Licensing Defamation Allegations")).

////

////

////

4

United States District Court
Northern District of California

**C.    Dr. Laps' Section 220 Claim**

California Education Code Section 220 prohibits various kinds of discrimination in educational institutions. *See* Cal. Educ. Code § 220. Dr. Laps' Section 220 claim is based upon his general allegations of hostility based upon his Jewish and Israeli statuses, briefly covered above. *See, supra*, §§ I.A-B; *see also* Compl., ¶¶ 339-48. However, Dr. Laps "concedes a citation error in citing [Section] '220' and not [Section] '66270.'" *See* Dkt. 37 at 26. It is ultimately this citation error that is the basis for Defendants' request to dismiss this claim and, in opposition, Plaintiff's request to be given leave to amend. *Compare id. with* Dkt. 32 at 15. Accordingly, the Court does not delver further into factual allegations underlying this claim.

**D.    Procedural History**

After exhausting his administrative remedies, (Compl., ¶ 187), Dr. Laps filed the instant case on July 10, 2025. Defendants' Motion to dismiss claims 12 and 14, for defamation and violation of Section 220, respectively, was fully brief as of October 12, 2025. *See* Dkt. 40.

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (2009).

"Defamation is an invasion of the interest in reputation." *Ringler Assocs. Inc. v. Maryland*

1    *Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000).  It "involves [(1)] intentional publication of a

2    statement of fact which is [(2)] false, [(3)] unprivileged, and [(4)] has a natural tendency to injure

3    or which causes special damage."  *Id.*  "The two forms of defamation are slander or libel.  Slander

4    requires an oral utterance; libel requires a [written] publication."  *Joel v. Valley Surgical Ctr.*, 68

5    Cal. App. 4th 360, 372 (1998) (cleaned up) (internal citations omitted).

6    **III.    DISCUSSION**

7        **A.    Dr. Laps has Adequately Pleaded a Defamation Claim**

8            To sufficiently plead a claim for defamation "[u]nder California law, the defamatory

9    statement must be specifically identified, and the plaintiff must plead the substance of the

10   statement. Even under the liberal federal pleading standards, general allegations of the defamatory

11   statements that do not identify the substance of what was said are insufficient."  *Norsat Int'l, Inc.*

12   *v. B.I.P. Corp.*, No. 12-cv-00674-WQH (NLS), 2013 WL 5530771, at *5 (S.D. Cal. Oct. 3, 2013)

13   (citing, *inter alia*, *Okun v. Superior Ct.*, 29 Cal. 3d 442, 458 (1981)).  Some courts in this District

14   have explained that "a plaintiff must allege the 'substance of the alleged defamatory statements'

15   and 'specifically identify who made the statements, when they were made and to whom they were

16   made,'" (*e.g.*, *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-cv-05554-JST, 2018 WL 6331009,

17   at *4 (N.D. Cal. Dec. 4, 2018)), although the California Supreme Court has never adopted this

18   requirement.[2]  In any event, the touchstone is whether "the pleading gives notice of the issues

19   sufficient to enable preparation of a defense."  *Okun v. Superior Ct.*, 29 Cal. 3d 442, 458 (1981).

20           Defendants challenge that Dr. Laps has not sufficiently alleged defamation by way of

21   either the Title IX Defamation Allegations or the Legal Licensing Defamation Allegations.  The

22   Court disagrees.

23

24   ───────────────
     [2] Defendants do not cite any California Supreme Court case adopting the "who," "when" and "to

25   whom" requirements.  *See, generally*, Dkt. 32.  Defendants draw this requirement from *Hardin v.*
     *Mendocino Coast Dist. Hosp.*, which in turn relies on two other cases from this District.  2018 WL

26   6331009, at *4 (citing, *inter alia*, *PAI Corp. v. Integrated Sci. Sols., Inc.*, No. 06-cv-5349-JSW
     (JCS), 2007 WL 1229329, at *9 (N.D. Cal. Apr. 25, 2007) and *MacKinnon v. Logitech Inc.*, No.

27   15-cv-05231-TEH, 2016 WL 541068, at *5 (N.D. Cal. Feb. 11, 2016)).  *PAI Corp.*, however,
     included no analysis of this element, while *MacKinnon* dismissed the defamation claim because

28   the recipients were alleged to be merely "third person recipients and other members of the
     community who are known to Defendants."  *See id.*

*United States District Court*
*Northern District of California*

### 1.    Substance of the Alleged Defamatory Statements

The Parties agree that Dr. Laps must allege the substance of the alleged defamatory statements with a sufficient degree of specificity.  The Court finds he has done so.

With regard to the Title IX Defamation Allegations, Dr. Laps alleged that the substance of the statement was that a Title IX investigation for sexual harassment had been opened into Dr. Laps.  *See* Compl., ¶¶ 10, 100, 176, 318-22.  It is true that Dr. Laps does not allege the specific words used, nor whether they were written or oral.  Neither is required.  Defamation may be written or oral under California law.  Cal. Civ. Code § 44 ("Defamation is effected by either … (a) Libel [or] (b) Slander.");  *Joel v. Valley Surgical Ctr.*, 68 Cal. App. 4th at 372 (1998);  *see also Norsat Int'l, Inc. v. B.I.P. Corp.*, No. 12-cv-00674-WQH, 2013 WL 5530771, at *4 (S.D. Cal. Oct. 3, 2013) (rejecting the argument that, among other things, plaintiff was required to plead "whether [a statement] was written or spoken….").  Moreover, the California Supreme Court has squarely rejected an "exact words" requirement:  "Nor is the allegation defective for failure to state the exact words of the alleged slander…."  *Norsat*, 2013 WL 5530771, at *5 (quoting *Okun v. Superior Court*, 29 Cal. 3d 442, 458 (1981)).  Here, Dr. Laps has pleaded "the substance of the defamatory statement," and that is sufficient.  *Id.*

With regard to the Licensing Defamation Allegations, Dr. Laps was even more specific, alleging that Dr. Chou stated his absence from the Chou Lab "was due to a 'legal licensing' issue with Dr. Laps' work."  *E.g.*, Compl., ¶ 121;  *see also id.*, ¶¶ 11, 121, 315-17 and 325.  Again, while Dr. Laps has not pleaded the specific words or whether the statement was oral or written, he has sufficiently pleaded its substance.

### 2.    "Who" Made the Statement and "When"

As to the "who" and "when" components, the Court agrees with Defendants that Dr. Laps must plead these elements to enable Defendants to prepare their defense.  However, the Court finds the allegations of the Complaint sufficient.

With regard to "who," Defendants do not challenge the sufficiency of Dr. Laps' allegations – Dr. Chou allegedly made the statements.  *See* Dkt. 32 at 11;  Compl., ¶¶ 10, 100, 176, 318-22 (Title IX Defamation Allegations), 11, 121, 315-17 and 325 (Licensing Defamation Allegations).

United States District Court
Northern District of California

With regard to "when" the statements were made, the allegations are more vague but are nonetheless specific enough to survive the pleading stage. The statement(s) underlying the Title IX Defamation Allegations are alleged to have been made in a roughly four-week window between August 14 and September 9, 2024. *See* Compl., ¶¶ 88, 98. The statement(s) underlying the Licensing Defamation Allegations are alleged to have been made in an *eleven-day* window between October 25 and November 4, 2024. Allegations of when a statement was made might always be more specific – down to the week, day, hour or minute; at some point, the Court agrees that a window would become overbroad. Absolute precision, however, is not required. In this case, particularly in light of the fact that Dr. Laps does not know—and cannot know absent discovery—on what precise day the statements were made, the Court finds these narrow windows sufficiently specific to survive a motion to dismiss. Requiring more would transform the liberal Rule 8 pleading requirements that ordinarily govern defamation claims into the Rule 9(b) "heightened" pleading requirements for claims of fraud. *See PAI Corp. v. Integrated Sci. Sols., Inc.*, No. 06-cv-05349-JSW (JCS), 2007 WL 1229329, at *7 (N.D. Cal. Apr. 25, 2007) ("It is well-established that in federal court, the degree of specificity required to adequately plead state law claims for libel and slander is governed by Rule 8 of the Federal Rules of Civil Procedure….") (collecting cases). "Courts have held that the requirements of Rule 8 are met with respect to libel and slander claims so long as the allegations provide the defendant with 'sufficient notice of the communications complained of to allow [the defendant] to defend [itself].'" *Id.* Dr. Laps' alleged timeframes do so in this case.

### 3. "To Whom" the Statements were Made

Finally, Defendants contend that Dr. Laps does not allege—for either category of defamation allegations—to whom Dr. Chou made the statements. Dkt. 32 at 11-13. The Court is persuaded that, in order to enable Defendants to prepare a defense, Dr. Laps must allege the recipient(s) of the statement; the question remains how specific that identification must be.

As Dr. Laps points out and Defendants do not dispute, he alleges that the Title IX-related statements were made to other "Stanford staff and administrators" while the "Legal Licensing"-related statements were made to "at least one Stanford researcher" who was Dr. Laps' colleague at

Stanford, as well as potentially other "researchers, staff, and/or Dr. Laps' colleagues." *Compare* Dkt. 37 at 16 *with* Dkt. 32 at 11-13. Defendants argue that this is not enough, relying on *White v. Home Depot U.S.A. Inc.*, No. 17-cv-00752, 2019 WL 1171163, at *22-23 (S.D. Cal. Mar. 13, 2019) (entering summary judgment against a defamation plaintiff because, in part, "vague references to 'Home Depot managers' and 'fellow employees' fails to plead defamation with the requisite particularity."), *aff'd sub nom. White v. Home Depot USA, Inc.*, 832 F. App'x 471 (9th Cir. 2020). The Court disagrees.

*White v. Home Depot* is inapposite for several reasons. First, the decision was issued on summary judgment and determined that "White's defamation claim lack[ed] **evidence**." *Id.* at *23 (emphasis added). As the court there noted, "[b]ecause summary judgment is a favored remedy for defamation claims, the plaintiff bears a heavy burden to show a triable issue exists and that there is 'high probability the plaintiff will ultimately prevail.'" *Id.* at *22. Second, as focused on by Defendants, there is a single paragraph in the court's decision that explained that "[a]s an initial matter, there are fundamental deficiencies with White's defamation claim as pleaded." Dkt. 32 at 11 (citing *id.*). However, the language pointed to by Defendants does not relate solely to a failure to identify "to whom" the statements were made – there was a failure to identify **who** made the statements at all. *White*, 2019 WL 1171163, at *22-23 (contrasting the initial "Home Depot managers [to] fellow employees" allegation with the more specific "ASM Donna [to] other 'Home Depot employees'" identification raised in opposition to summary judgment; the court found the former would have been deficiently pleaded,[3] while the latter lacked sufficient evidentiary support.). Here, Dr. Laps' Complaint does not suffer from the same deficiency. He has identified Dr. Chou as having allegedly made the statements.

A better benchmark is *MacKinnon v. Logitech Inc.*, No. 15-cv-05231-TEH, 2016 WL 541068, at *5 (N.D. Cal. Feb. 11, 2016), a case relied on by *Hardin* (on which Defendants rely on for the existence of the "to whom" pleading requirement). Dkt. 32 at 10 (citing *Hardin*, 2018 WL 6331009, at *4). In that case, the court found to be insufficient an allegation that statements were

---

[3] Although this was not the basis for the Court's decision. *See White*, 2019 WL 1171163, at *23.

made to "third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time." *MacKinnon*, 2016 WL 541068, at *5 (N.D. Cal. Feb. 11, 2016). However, such a general allegation—as broad as unspecified "third persons" and general "members of the community" is far more vague than the allegations here, *e.g.*, "colleagues of Dr. Laps." The Court is not convinced that there is a requirement for Dr. Laps to name colleagues who are unknown to him prior to discovery. The allegation here is sufficient.

\* \* \*

In tension with the level of particularity sought by Defendants, the California Supreme Court has held that "less particularity is required when it appears that [the] defendant has superior knowledge of the facts, so long as the pleading gives notice of the issues sufficient to enable preparation of a defense." *Harper v. Lugbauer*, No. 11-cv-01306-JW, 2011 WL 6329870, at *4 (N.D. Cal. Nov. 29, 2011) (quoting *Okun*, 29 Cal. 3d at 458). Here, the Court finds that Dr. Laps allegations—including the substance of the Title IX and "Legal Licensing" statements, the precise identification of who made the statements, the narrow time windows in which the statements were made and the identification of specific subsets of the Stanford community to whom they were made—are sufficient to enable Dr. Chou to prepare a defense. *Cf. Okun*, 29 Cal. 3d at 457-58 (noting that the fourth cause of action, for slander, which alleged that "Does 301-400" made a specific oral statement "within [the] one year last past" to "members of the Beverly Hills community" was sufficient "as to time and place of utterance and persons addressed.").

Defendants Motion is **DENIED** as to claim 12.

## B.    Claim 14 is Dismissed with Leave to Amend

California Education Code Section 220 prohibits various kinds of discrimination in educational institutions. *See* Cal. Educ. Code § 220. Dr. Laps' Section 220 claim is based upon his general allegations of hostility based upon his Jewish and Israeli statuses, briefly covered in Section I, above. *See, supra*, §§ I.A-B. Defendants point out, however, that "Section 220 simply "does not apply to a postsecondary institution such as [Stanford]." Dkt. 32 at 14 (citing *Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-03717-WHO, 2015 WL 8527338, at *18 (N.D. Cal.

Dec. 11, 2015)).  Instead, as Defendants acknowledge, California Education Code Section 66270 "provides substantially identical protections as section 220 but applies to 'any program or activity conducted by any postsecondary educational institution that receives, or benefits from, state financial assistance or enrolls students who receive state financial aid.'"  *Id.* (quoting *Karasek*, 2015 WL 8527338, at *18 (quoting Cal. Educ. Code § 66270)).

Dr. Laps "concedes a citation error in citing [Section] '220' and not [Section] '66270.'" He requests either that the Court deem claim 14 sufficiently pleaded because of the "substantially identical protections" provided by Section 66270, or in the alternative grant leave to amend.  Dkt. 37 at 26-27.  In reply, Defendants argue that "the proper course of action is for him to file an amended complaint."  Dkt. 40 at 14.

Accordingly, the Court **GRANTS** the Motion as to claim 14 and **dismisses claim 14 with leave to amend**.

## IV.    CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.  The request to dismiss claim 12 is **denied**, while the request to dismiss claim 14 is **granted with leave to amend**.

Plaintiff may file an amended complaint **no later than January 30, 2026**;  Defendants' response shall be **due 10 days thereafter**.

**SO ORDERED.**

Dated: January 20, 2026

SUSAN VAN KEULEN
United States Magistrate Judge