Ameet O'Rattan Sharma (SBN 354399)
Angela Hooper (SBN 334269)
**AMEET SHARMA, ATTORNEY-AT-LAW**
757 Miller Ave
Chico, CA 95928
Phone: (916) 932-8928
Email: ameet@omnifirms.com
Email: a.hooper@omnifirms.com

Attorney for Plaintiff
Dr. Shay Laps

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DR. SHAY LAPS,<br><br>Plaintiff,<br><br>v.<br><br>THE LELAND STANFORD JUNIOR UNIVERSITY, and DANNY HUNG-CHIEH CHOU, Associate Professor of Pediatrics, in his official and personal capacities,<br><br>Defendants. | Case No.: 5:25-CV-05767-SVK<br><br>The Honorable Susan van Keulen<br><br>**JOINT STATEMENT REGARDING DEPOSITION DISPUTES AND PROTECTIVE ORDER**<br><br>Action Filed: July 10, 2025 |

Plaintiff Dr. Shay Laps ("Plaintiff" or "Dr. Laps") and Defendants The Board of Trustees of The Leland Stanford Junior University ("Stanford") and Danny Hung-Chieh Chou ("Dr. Chou") (collectively, "Defendants," and together with Plaintiff, the "Parties") submit this Joint Statement pursuant to Section 7(b) of the Court's Civil and Discovery Referral Matters Standing Order and the Court's July 14, 2026 Order Regarding Discovery Disputes at Dkt No. 78 and Modifying Case Schedule. *See* Dkt Nos. 78, 82. As of the filing date, 90 days remain before fact discovery closes on November 13, 2026, and 310 days remain before trial on June 21, 2027. The unresolved issues are (1) whether Dr. Laps' deposition must occur in San Francisco or may proceed by videoconference with Dr. Laps present in Belgium; (2) whether the deadline for Dr. Laps' deposition should be extended; (3) whether Dr. Chou's deposition must take place before Dr. Laps' deposition; and (4) whether Defendants should be compelled to produce certain documents before Dr. Laps' deposition.

As to the location and timing of Dr. Laps' deposition, Plaintiff proposes that the deposition proceed on September 21, 2026, and requests that the deadline for his deposition be extended from August 28, 2026 to September 25, 2026. Dr. Laps would appear remotely from Belgium, while Defendants' counsel, Plaintiff's counsel, the court reporter, the videographer, and the interpreter would participate remotely. Defendants propose that Dr. Laps' deposition take place on August 26 and 27, 2026 in San Francisco, CA, as currently noticed.

## PLAINTIFF'S POSITION

### I. RELIEF REQUESTED

Plaintiff requests an order: (1) permitting Dr. Laps' deposition to proceed by videoconference while he is physically in Brussels, Belgium; (2) extending the deadline to complete his deposition through September 25, 2026; (3) requiring Defendants to supplement their responses and production concerning Requests for Production Nos. 16, 18, 19, 22, and 31; and (4) requiring Defendants to complete that production and Dr. Chou's deposition before Dr. Laps is deposed. Pursuant to the Order re Discovery Disputes, we propose a specific date for Dr. Laps' deposition be taken on September 21. See Dkt No. 82, ¶ 3b.

## II. DEFENDANTS' INCOMPLETE PRODUCTION REQUIRES DR. CHOU TO BE DEPOSED FIRST

### A. Material Evidence Remains Unproduced.

Defendants have not produced all documents responsive to Requests for Production Nos. 16, 18, 19, 22, and 31. The missing materials concern Dr. Chou's communications about Plaintiff, the alleged sexual-misconduct, and Chou's referrals regarding Plaintiff's applications for postdoctoral positions. They bear directly on the content, publication, recipients, and consequences of the allegedly defamatory statements and are uniquely within Defendants' possession, custody, or control. Plaintiff met and conferred with Defendants over the insufficient discovery production in its July 31, 2026, email and responsive letter dated August 6, 2026. See, Exh. A. Hooper. Decl.

Additionally, after leaving the Chou Lab, Plaintiff applied to approximately 50 laboratories worldwide. Many professors expressed substantial interest and advanced his application to the reference stage when they would contact his former principal investigator, Dr. Chou. Almost every opportunity ended at that stage. Yet Defendants have produced no emails, text messages, call records, reference responses, or other communications between Dr. Chou and those prospective employers. Defendants also have not produced the complete communications concerning the alleged sexual-misconduct, including responsive communications involving Dr. Rosen, Dr. Ojo, Dr. Chou, Jane Roe, Ying, Terra Lin, and other Chou Lab members, whether or not those communications identify Plaintiff by name.

Specifically, in Defendants' production, Stanford_00009451 & 00009452 & 00009453 Jane Roe mentions emailing an associate regarding the allegations raised against Plaintiff and his interaction with Jane Roe on August 14, 2024 – a situation that Plaintiff firmly believes was fabricated against him with the intentions of causing him harm. Defendants' production did not include any documents evidencing such correspondence. These communications are relevant to Plaintiff's claims and should be produced by Defendants with ample time to review before he is required to sit for deposition.

The production is also nonresponsive as to the requested video from the lobby and the relevant table where plaintiff was sitting when Jane Roe approached him as well as any additional

videos from within the building or outside that can be examined to shed light on the event from August 14, 2024, at approximately 3:00 p.m. The still photographs from April 2026, produced by Defendants, do not depict the relevant date or substitute for the requested footage. Defendants should produce the footage or provide a verified supplemental response identifying the search performed, the footage's disposition, when and how it became unavailable, and the applicable retention or preservation policy. These are continuing deficiencies. Plaintiff's prior counsel identified shortcomings in Defendants' production in letters dated January 5, 2026, and January 30, 2026.

### B. <u>Good Cause Supports Sequencing Production and Dr. Chou's Deposition First.</u>

Dr. Chou allegedly made or communicated the statements underlying Plaintiff's defamation claims and has direct knowledge of what he said, to whom, on what basis, and whether he communicated with prospective employers. Rule 26(d)(3) permits the Court to alter the sequence of discovery in the interests of justice, and Rule 26(c)(1) authorizes protective terms governing the time, place, and method of discovery. Fed. R. Civ. P. 26(c)(1)-(d)(3).

Under the Federal Rules of Civil Procedure, which the United States Supreme Court has interpreted, a trial judge is vested with broad discretion to manage and tailor discovery. Specifically, the Supreme Court has recognized that the trial court has the explicit authority to dictate the sequence of discovery and may set the timing and sequence of discovery under Federal Rule of Civil Procedure 26(d). *Crawford-El v. Britton* (1998) 523 U.S. 574 [118 S.Ct. 1584, 140 L.Ed.2d 759].)

Additionally, under Federal Rule of Civil Procedure 26(c), a party or deponent may move for a protective order. USCS Fed Rules Civ Proc R 26. Upon a showing of good cause, the trial court has the authority to issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense by specifying terms for the disclosure or discovery, including the time and place of the discovery. USCS Fed Rules Civ Proc R 26. The Supreme Court has underscored that because of the liberal nature of pretrial discovery; it is necessary for trial courts to utilize this protective order authority to prevent discovery abuse and

protect the privacy interests of litigants. *Seattle Times Co. v. Rhinehart* (1984) 467 U.S. 20 [104 S.Ct. 2199, 81 L.Ed.2d 17].

The authority to alter the sequence or timing of depositions is not unrestricted. Under federal practice, any limitation or sequencing ordered by a court must be consistent with the standard that the burden or expense of the proposed discovery does not outweigh its likely benefit, considering the needs of the case, the resources of the parties, and the importance of the issues. *Crawford*, at 599. Under both systems, a party seeking to alter the default timing or sequence of a deposition must generally demonstrate "good cause" to obtain a protective order from the court. *People v. Superior Court* (Cheek) (2001) 94 Cal.App.4th 980 [114 Cal.Rptr.2d 760].)

Requiring Plaintiff to undergo examination before receiving the relevant documents would force him to answer concerning communications he did not send, receive, or witness and about which Defendants possess superior information. It would unfairly bind Plaintiff to an incomplete record and permit Defendants to continue to withhold information inaccessible to Plaintiff's claims. Good cause therefore exists to require Defendants to complete their production, allow Plaintiff a reasonable period to review it, and depose Dr. Chou before taking Dr. Laps' deposition.

## III. GOOD CAUSE SUPPORTS A REMOTE DEPOSITION FROM BRUSSELS

### A. <u>The Proposed Procedure Is Authorized and Lawful.</u>

The Federal Rules of Civil Procedure authorize the Court to prescribe a deposition's place and method and to order that it proceed remotely, where a deposition conducted by remote means occurs where the witness answers the questions. Fed. R. Civ. P. 30(b)(4); Fed. R. Civ. P. 28(b)(1)(C). Belgium permits voluntary depositions of willing witnesses, including depositions at the U.S. Embassy before a U.S. consular officer, provided arrangements are made in advance. Dr. Laps is willing to travel from Germany to Brussels and appear for deposition. Plaintiff is able to organize for the oath being administered by the consular officer. The Brussels Embassy personnel also advised that Dr. Laps may take the oath there and continue with the videoconference from a hotel. The keeping of the deposition at the Embassy would cost about $2,007.00 for the first hour and $309 per additional hour. Furthermore, the Embassy personnel advised that once oaths are

taken, the officer may step out, if all attorneys agree. Therefore, a simple stipulation will solve many of the logistics regarding the remote deposition.

Plaintiff proposes to sit for deposition on September 21, 2026. The requested extension through September 25th will permit the parties to use the proposed date or another date within the extended period. Courts generally apply Rule 30(b)(4) liberally when the proponent identifies a legitimate reason for remote examination. Once that showing is made, the opposing party must identify particularized prejudice. *Hernandez v. Bobst Grp. N. Am., Inc.*, No. 1:19-cv-00882-NONE-SKO, Dkt No. 31, at 3-4 (E.D. Cal. Oct. 14, 2020); *Lopez v. CIT Bank, N.A.*, No. 15-cv-00759-BLF (HRL), 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015). Federal regulations likewise recognize that foreign depositions may proceed on notice before a United States notarizing officer authorized to administer oaths. See 22 C.F.R. §§ 92.51(c), 92.55.

**B. <u>Travel, Immigration, and Safety Concerns Establish Good Cause.</u>**

Dr. Laps resides and works full-time in Germany. Requiring him to travel to California would entail approximately twelve hours of travel each way, lodging and local transportation, and time away from his employment and academic work. Courts may consider a deponent's residence and the burden of international travel when fixing the place and manner of a deposition. *See McArthur v. Rock Woodfired Pizza & Spirits*, 318 F.R.D. 136, 139 (W.D. Wash. 2016).

Plaintiff also has immigration and safety concerns tied to the allegations in this case. Prior counsel consulted an immigration attorney who advised that returning to the United States presents a risk of denied entry and possible deportation due to overlap-related restrictions between his work visa and the duration of his stay outside the United States.

Plaintiffs' fear also stems from the traumatic experience he endured while at Stanford that led to the loss of his employment and JDRF grant. Plaintiff is also fearful of coming back to the United States because Plaintiff was informed by a Stanford-affiliated adviser that Stanford would continue pursuing him and his family if he did not accept a proposed settlement and withdraw his claims against Dr. Chou. These circumstances support conducting the deposition without requiring Plaintiff to return to California.

Furthermore, Plaintiff strongly fears returning to the United States because of a document that he reviewed regarding Jane Roe's December 24, 2025, correspondence with an additional professor at Stanford, in which she presented plaintiff as a risk to the community, asked the Professor to alert Plaintiff's new PI, (Dr. Bogyo) of the unsubstantiated claims of sexual misconduct, in an attempt to further sabotage and harm Plaintiff at Stanford. This was after Title IX confirmed there was no formal complaint for sexual harassment filed against Plaintiff.

In addition, Plaintiff reviewed correspondence between Danny Chou and Human Resources, in which Chou stated that he locked plaintiff out of the laboratory for nearly a month due to a security concern related to a murder committed by someone at a completely different university, that had no connection to Plaintiff or Stanford University, thereby painting Plaintiff as some sort of criminal threat to the public. In addition, Plaintiff does not want to return to U.S. soil because of a comment that was made by Meagan Todaro Coffman in front of Margaret Murphy and Prof. Sofie Kleppner where Coffman stated in a threatening manner that the complaints made about Plaintiff could be reopened at any time. Lastly, the antisemitic "terror net" with roots deeply at Stanford (e.g. SJP organization acting with authorizations within Stanford University) called just recently on social media to perform an "Intifada", which is a call to cause harm to Israelis.

Plaintiff was unprotected from the harms identified above while in the United States. Danny Chou failed to protect Plaintiff, Stanford failed to protect Plaintiff, and together Defendants aimed to cause Plaintiff harm. Plaintiff wishes to avoid coming to the United States out of fear for his safety.

## IV. CONCLUSION

Plaintiff respectfully requests that the Court permit Dr. Laps' deposition to proceed remotely from Brussels, Belgium for one day as required by applicable law on the proposed date of September 21, 2026, extend the completion deadline through September 25, 2026, require Defendants to supplement their responses and production concerning Requests for Production Nos. 16, 18, 19, 22, and 31, and order that Defendants complete that production and Dr. Chou's deposition before Dr. Laps is deposed.

**DEFENDANTS' POSITION**

The Court ordered that "**[n]o later than August 28, 2026**, Plaintiff shall appear for deposition as presently noticed." ECF No. 82, at 2. The Court allowed Dr. Laps to move for a protective order for a remote deposition, but it specifically ordered that any such a request "must include a proposal for a specific date **no later than August 28th.**" *Id.* at 2 (emphasis added). Instead of complying with the Court's order, Dr. Laps asks the Court to vacate its July 14 order, postpone his deposition yet again, allow him to appear remotely, *and* defer his deposition until after Dr. Chou's deposition and after Defendants produce purported documents to resolve disputes he raises for the first time in this joint statement. The Court should put a stop to Dr. Laps' continued delay tactics and order him to appear in person for his deposition on August 26 and 27, as presently noticed.

**I. Dr. Laps Must Appear for His Deposition Before August 28.**

Despite being under a Court order to sit for his deposition by August 28, Dr. Laps has manufactured additional excuses why his deposition must be delayed.

First, Dr. Laps' new complaints about a handful of responses to his document requests, which he has raised without appropriate meet and confer efforts, are irrelevant to whether his deposition should proceed by August 28. Dr. Laps will be deposed based on his personal knowledge, not about what Defendants' documents do or do not show. If he lacks knowledge about any topics or documents raised at his deposition, he can simply say so. None of the purported deficiencies with Defendants' document production have anything to do with Dr. Laps' personal knowledge, and none provide good cause to delay Dr. Laps' deposition. One of his complaints (again raised for the first time in this joint statement) focuses on an alleged email exchange between Jane Roe and another person—not a communication he was involved in or had reason to know about. Defendants have produced 1,580 documents for which Dr. Laps is a custodian that he can use to prepare for his deposition. Schar Decl. ¶ 20. Further, Dr. Laps' complaints are speculative, vague, and/or demonstrably incorrect. *Id.* ¶¶ 19–28. For example, he speculates communications must exist between Dr. Chou and various professors to whom Dr. Laps applied for postdoctoral positions. Such communications are irrelevant to Dr. Laps' deposition, and in any event, Defendants' review has identified none. *Id.* ¶ 26. Even if Dr. Laps' complaints had any basis—they do not—it is well established a party "may not withhold

discovery," including refusing to attend its deposition, "solely because it has not obtained to its satisfaction other discovery." *Kern Strike Advisory, LLC*, 2025 WL 1723146, at *1 (C.D. Cal. Jan. 2, 2025); *see Bledsoe v. Martinez*, 2021 WL 463598, at *4 (E.D. Cal. Feb. 9, 2021); *Dykes v. BNSF Ry. Co.*, 2018 WL 1456931, at *3 (W.D. Wash. Mar. 23, 2018). If Dr. Laps wants to raise alleged document deficiencies with the Court, he must first meet and confer and then, if necessary, file a separate joint statement. Standing Order § 7(b); *see* Schar Decl. ¶ 19.

Second, Dr. Laps' new demand that Dr. Chou must be deposed first is equally baseless. Dr. Chou's deposition has not been noticed, and Dr. Laps did not even raise his intent to take Dr. Chou's deposition until three days after the Court ordered Dr. Laps to appear for his deposition by August 28. Schar Decl. ¶ 13. By contrast, Defendants have been seeking dates for Dr. Laps' deposition since November 2025, Defendants served a deposition notice in June 2026, and Dr. Laps is under an order to appear. *Id.* ¶¶ 3, 9–11. In any event, Dr. Laps' argument that Dr. Chou should be deposed first makes no sense: Dr. Laps will be deposed based on his personal knowledge, not based on *Dr. Chou's* alleged "direct knowledge" about the defamation claim. As the court ruled in *Segal v. Amazon.com, Inc.*, 2011 WL 841317, at *1 (W.D. Wash. Mar. 7, 2011), plaintiffs "should be able to answer deposition questions about their case without first obtaining defendant[s'] discovery."

Finally, to the extent Dr. Laps is requesting an extension of the deposition deadline because the U.S. Embassy in Brussels is unavailable before August 28, *see* Laps Decl. ¶ 9, his request is meritless. When Dr. Laps proposed to appear remotely with the Embassy's assistance, he bore the risk it might not be able to host him before the deadline. That this option is now unworkable does not entitle him to an additional month in the hopes the Embassy might accommodate him later.

**II. Dr. Laps Should Be Required to Appear In Person for His Deposition.**

It is well established a plaintiff "will be required to make himself or herself available for examination in the district in which the suit was brought." *Music Grp. Macao Com. Offshore Ltd. v. Foote*, 2015 WL 13423886, at *1 (N.D. Cal. Aug. 11, 2015) (cleaned up); *see Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994). Courts routinely deny requests by plaintiffs seeking to avoid traveling to the district in which they filed suit, including from overseas. *See, e.g.*, *Sunsauce Foods Indus. Corp. v. Son Fish Sauce USA Corp.*, No. 22-CV-08973-PCP (SVK), 2024 WL 778395, at *2

(N.D. Cal. Feb. 26, 2024) (denying plaintiff's request for witness to appear remotely from Thailand rather than travel to California); *Averza v. Super Micro Computer, Inc.*, No. 24-CV-06147-EJD (SVK), 2025 WL 668816, at *3 (N.D. Cal. Jan. 27, 2025) (requiring plaintiff's witness to appear for deposition in the Northern District, where suit was filed); *Foote*, 2015 WL 13423886, at *2–3 (ordering plaintiff's witness to be deposed in California, rather than remotely from the Philippines); *Moore v. EO Prods., LLC*, 2024 WL 4441488, at *1–2 (N.D. Cal. Oct. 8, 2024); *Mullins v. Premier Nutrition Corp.*, 2014 WL 4058484, at *1–2 (N.D. Cal. Aug. 15, 2014); *Fenerjian v. Nong Shim Co.*, 2016 WL 1019669, at *3–4 (N.D. Cal. Mar. 15, 2016).

Dr. Laps cannot show good cause to overcome this rule. The parties have long understood Dr. Laps would attend his deposition in this District. In November 2025, Dr. Laps' counsel stated they were consulting with immigration counsel regarding multiple trips to the United States "given that he may need to appear for both a deposition and a mediation." Weeks later, they confirmed Dr. Laps' existing B-1 visa "is sufficient to allow him to travel to the United States" and asked Defendants to provide dates on which Dr. Laps could be deposed in the United States. Schar Decl. Exs. A, B.

Only now, under a Court order to sit for his deposition, does Dr. Laps backtrack and claim he cannot be burdened to travel to the United States. He first argues traveling to California would require traveling nearly twelve hours each way, finding lodging and local transportation, and taking time off from work. But as this Court has recognized, "issues of time and money present ***ordinary concerns attendant to travel***," not good cause for a plaintiff to avoid traveling to their chosen forum. *Sunsauce*, 2024 WL 778395, at *2 (emphasis added); *see Mullins*, 2014 WL 4058484, at *2; *Fenerjian*, 2016 WL 1019669, at *3. Traveling to California is simply one of the costs of prosecuting an action here.[1]

None of Dr. Laps' cited authorities support his position. *Hernandez v. Bobst Grp. N. Am., Inc.*, 2020 WL 6063143, is inapposite: the court granted a plaintiff's request to appear for deposition remotely in the midst of the COVID-19 pandemic, noting "physical distancing orders . . . are a legitimate reason for holding depositions remotely." *Id.* at *3 (citation omitted). *Lopez v. CIT Bank, N.A.*, 2015 WL 10374104, involved a request that *all* depositions in the case proceed remotely (not

---

[1] Moreover, traveling to Brussels would equally require Dr. Laps to spend money on lodging and local transportation, and to take time off from work.

just the plaintiffs' depositions). *Id.* at *2. And in *McArthur v. Rock Woodfired Pizza & Spirits*, 318 F.R.D. 136, the *defendant*, not the plaintiff, sought a protective order to avoid traveling from California to Washington for his deposition because significant childcare obligations made traveling to Washington a legitimate hardship. *Id.* at 139. Such hardship is not present here.[2]

Dr. Laps also reraises purported immigration concerns, but he misrepresents the record given this concern was previously resolved. Dr. Laps' prior counsel confirmed Dr. Laps' B-1 visa "is sufficient to allow him to travel to the United States" for his deposition. Schar Decl. ¶ 5 & Ex. B.

In addition, Dr. Laps' safety concerns strain credulity. Every alleged incident he recounts—a lockout from his lab, remarks that internal complaints could be reopened, and pressure to take a settlement—parrots his complaint and provides no explanation why he would face "harassment or false detention" from anyone by being deposed in San Francisco. Laps Decl. ¶ 8. He also cites a vague social media post by a student organization bearing no relation to Dr. Laps or this suit. *Id.* ¶ 10. Notably, while his stated concerns all stem from his experiences at Stanford, he claims to fear returning to *anywhere* in the United States—presumably including other U.S. cities Defendants offered he travel to for his deposition (Los Angeles, Chicago, Washington, D.C., and New York City), an offer he has ignored. *Id.* ¶ 8; Schar Decl. ¶ 15. None of these "concerns" provide good cause to avoid traveling to this District, where Dr. Laps filed suit.[3]

Finally, despite having a month to provide specificity on his remote deposition request, Dr. Laps provides no clarity about where, when, or how his remote deposition would occur. Far from providing a "specific location" for the deposition, ECF No. 82, at 2, he muses about various options that are largely unsupported by sworn statements. Maybe he will appear from the Embassy; or maybe he will be sworn in by a consular officer and then go to an unspecified hotel; or maybe he will forgo the Embassy and be sworn in "remotely by video." Laps Decl. ¶ 9.[4] And although Dr. Laps proposes

---

[2] There is also a general presumption that defendants should be deposed in the district of their residence because, unlike plaintiffs, they are "not before the court by choice." *Monolithic Power Sys., Inc. v. Dong*, 2023 WL 350400, at *9 (N.D. Cal. Jan. 20, 2023) (citation omitted).

[3] Dr. Laps' safety concerns, if credited, would presumably justify his refusal to attend trial in person.

[4] It is an open question whether Rules 28 and 30 permit a court reporter to remotely administer Dr. Laps' oath. *Compare Azizpur v. AAA Life Ins. Co.*, 2025 WL 819700, at *1 (C.D. Cal. Feb. 27,

September 21 for his deposition, he never states the Embassy is available that day. He also does not appear to recognize that September 21 is Yom Kippur, a date on which the deposition cannot occur given it is a Jewish holiday impacting counsel (and presumably Dr. Laps himself). Schar Decl. ¶ 31.

**III. A Remote Deposition Would Severely Prejudice Defendants.**

A remote deposition would unfairly undermine Defendants' ability to effectively test Dr. Laps' credibility. This case may largely come down to whether the factfinder credits Dr. Laps' testimony against the accounts of everyone he baselessly accuses of engaging in a discriminatory, retaliatory conspiracy. Because Dr. Laps' "credibility is crucial," evaluating his credibility in person is more important than in the ordinary case, especially here, where the witness is the plaintiff and his testimony is the linchpin of his case. *Emerson v. Prudential Ins. Co. of Am.*, 2024 WL 4730422, at *3 (N.D. Cal. Nov. 7, 2024); *see also Fenerjian*, 2016 WL 1019669, at *3; *People Ctr., Inc. v. Deel, Inc.*, 2026 WL 1628696, at *1 (N.D. Cal. June 5, 2026); *Huddleston v. Bowling Green Inn of Pensacola*, 333 F.R.D. 581, 586–87 (N.D. Fla. 2019).

Conducting the deposition remotely while Dr. Laps is in Brussels would also present logistical challenges. Schar Decl. ¶ 15. Starting the deposition at 9:00 AM Pacific Time (6:00 PM in Belgium) would require Dr. Laps to be deposed well past midnight in Belgium, or the parties would have to break the deposition across multiple sessions, hampering the deposition. If the deposition occurred during Belgian working hours, it would begin at 12:00 AM Pacific Time (midnight). Defendants should not be forced to conduct an overnight, remote deposition that will almost certainly affect counsel's ability to take the deposition effectively. Another court in this District observed the time difference between San Francisco and Rome (which is in the same time zone as Belgium) was "so significant" that a remote deposition was "highly impractical and therefore not suitable for the witnesses and counsel involved." *People Ctr., Inc.*, 2026 WL 1628696, at *1.

**IV. Dr. Laps' Deposition Should Occur Over Two Days.**

Although the parties have long understood Dr. Laps' deposition would take place over two days, *see* Schar Decl. ¶ 9, Dr. Laps now asks, for the first time, that his deposition be limited to a

---

2025), *with In re Uber Techs., Inc. Passenger Sexual Assault Litig.*, 2024 WL 3747391, at *3 (N.D. Cal. Aug. 9, 2024).

single day. Contrary to Dr. Laps' misreading, Rule 30 provides that a deposition shall be for one day "[u]nless otherwise . . . ordered by the court." Fed. R. Civ. P. 30(d)(1). The Court ordered Dr. Laps to appear "as presently noticed," and Defendants' notice set two days. Schar Decl. ¶ 9. Two days are warranted. Dr. Laps is the central witness to his sprawling allegations, and his counsel has advised he will require a Hebrew interpreter, which will considerably impede the pace of his testimony. *See Lin v. Solta Med., Inc.*, 2024 WL 2845531, at *1 (N.D. Cal. June 5, 2024) (extending deposition time based on need for interpreter); Fed. R. Civ. P. 30(d)(1), advisory comm. note to 2000 amendment.

Dated: August 14, 2026

**AMEET SHARMA, ATTORNEY-AT-LAW**

By: /s/ Angela Hooper, Esq.

Ameet O'Rattan Sharma
Angela Hooper
757 Miller Avenue
Chico, CA 95928
Telephone: (916) 932-8928
ameet@omnifirms.com
a.hooper@omnifirms.com

*Attorneys for Plaintiff Dr. Shay Laps*

Dated: August 14, 2026

**JENNER & BLOCK, LLP**

By: /s/ Reid J. Schar

Reid J. Schar
Laurie Edelstein
525 Market Street, 29th Floor
San Francisco, CA 94105
Telephone: (628) 267-6800
RSchar@jenner.com
LEdelstein@jenner.com

**GORDON REES SCULLY MANSUKHANI**
Marcie Isom Fitzsimmons
Christina Shahkar
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 986-5900
misom@grsm.com
cshahkar@grsm.com

*Attorneys for Defendants The Board of Trustees of The Leland Stanford Junior University and Danny Hung-Chieh Chou*

**RULE 5-1 ATTESTATION**

I, Angela Hooper, am the ECF user whose identification and password are being used to file this Joint Statement. In compliance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: August 14, 2026

By: /s/ Angela Hooper, Esq.
Angela Hooper