Ameet O'Rattan Sharma (SBN 354399)
Angela Hooper (SBN 334269)
**AMEET SHARMA, ATTORNEY-AT-LAW**
757 Miller Ave
Chico, CA 95928
Phone: (916) 932-8928
Email: ameet@omnifirms.com
Email: a.hooper@omnifirms.com

Attorney for Plaintiff
Dr. Shay Laps

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

DR. SHAY LAPS,

Plaintiff,

v.

THE LELAND STANFORD JUNIOR UNIVERSITY, and DANNY HUNG-CHIEH CHOU, Associate Professor of Pediatrics, in his official and personal capacities,

Defendants.

Case No.: 5:25-CV-05767-SVK

The Honorable Susan van Keulen

**DECLARATION OF ANGELA HOOPER IN SUPPORT OF PLAINTIFF'S POSITION ON PARTIES' JOINT STATEMENT**

Action Filed: July 10, 2025

I, Angela Hooper, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California. I am counsel of record for Plaintiff Dr. Shay Laps in this action. I have personal knowledge of the facts stated herein, and, if called as a witness, I could and would testify competently to them.

2. The transfer of the case file from prior counsel has been rocky at best. Our firm did not have the proper ESI software to comply with the Court's ESI Order, and I could not effectively review the discovery and evidence exchanged between the parties. This issue delayed any progress in this lawsuit.

3. Recently, we obtained an ESI administrator, completed several ESI training courses, and we have ingested the case file into our ESI software. I have been able to review the documents that have been exchanged pursuant to General Order 71 ("GO 71") as well as the Defendants' recent document production in response to Plaintiff's request for production.

4. After reviewing all the documents with Plaintiff, we discovered that Defendants have failed to produce any responsive documents related to Plaintiff's claims of defamation. Specifically, Defendants have failed to produce communication between Stanford/ Danny Chou and any professor related to Plaintiff's potential postdoctoral employment with other laboratories.

5. Additionally, I reviewed correspondence from prior counsel between Defense counsel. I discovered that prior counsel met and conferred with Defense counsel on January 5, 2026, and again on January 30, 2026, discussing Defendant's missing documents. It was made very clear to Defense counsel that Defendants must comply with their discovery obligations and Plaintiff must have a reasonable opportunity to review the documentation, prior to Plaintiff sitting for deposition.

6. The defamation claims are unique in that the allegations are plead on information and belief while the actual documentation and evidence is within Defendants' sole possession, custody, and control. This prejudices Plaintiff severely because he has not been provided with the opportunity to review all of the responsive documents within Defendants' possession. Accordingly, Defendant Danny Chou's deposition should take place prior to Plaintiff's deposition and after Defendants have produced all responsive documents.

7. We recently propounded substantial discovery to ensure that Plaintiff has a fair opportunity to determine what information Defendants possess—and what information they have not produced—regarding referrals to other laboratories.

8. Furthermore, we believe that the laws in Brussels, Belgium permit the remote taking of Plaintiff's deposition. It is a voluntary deposition conducted in a foreign nation under California Law, and the proceeding can be supervised by a person authorized to administer oaths under the laws of the United States, by a person authorized to administer oaths under the laws of the foreign nation, by a person appointed by commission or under letters rogatory, or any person agreed to by all parties, pursuant to California Code of Civil Procedure 2027.010. The date selected is September 21, 2025, but we are seeking permission to have Plaintiff's deposition taken no later than September 25, 2025 to account for any incidentals in Brussels.

9. Plaintiff has expressed legitimate safety concerns with traveling back to the United States – both regarding his visa and regarding his safety. Additionally, the expense of traveling to the United States places a financial hardship on Plaintiff.

10. I have met and conferred extensively with Defense counsel through email correspondence, written correspondence, and over the phone. We have not been able to come to an agreement on the present discovery issues.

11. We respectfully ask the Court to consider Plaintiff's discovery concerns and permit a remote deposition to occur in Belgium, after Defendants complete their discovery production and after the deposition of Defendant Danny Chou.

I declare under penalty of perjury under the laws of the State of California that foregoing is true and correct.

Executed on 8-13-2026, at Chico, California.

Angela Hooper

Angela Hooper

**AMEET SHARMA**
**ATTORNEY AT LAW**
Angela Hooper, Esq.
757 Miller Ave.
Chico, CA 95928
916-932-8928

**Meet and Confer Correspondence**

Dated: August 6, 2026

To: Reid Schar, Esq.(rschar@jenner.com)
Laurie Edelstein, Esq. (ledelstein@jenner.com)
Amy Gallegos, Esq.(agallegos@jenner.com)
Alex Ramsey, Esq.(aramsey@jenner.com)
Jenner & Block LLP
525 Market Street, 29th Floor
San Francisco, CA 94105-2737
***VIA E-MAIL ONLY***

**Re: Laps v. The Leland Stanford Junior University, et al.**
**Case No. 25-cv-5767 (N.D. Cal.)**

Dear Counsel:

This correspondence is part and parcel of Plaintiff's ongoing meet-and-confer efforts concerning discovery disputes in the above-referenced matter. Plaintiff, in the interest of saving space and time reincorporates Letters dated (January 5, 2026, & January 30, 2026) attached hereto as Exhibit "A" and write to address Defendants' continued failure to produce relevant records within their custody, possession, or control. Among other things, these records include communication relating to references for Dr. Laps during his search for postdoctoral employment after Stanford.

For example, Plaintiff applied to approximately 50 laboratories worldwide for postdoctoral positions. After expressing significant interest in Dr. Laps, interested employers would contact Dr. Chou for a reference regarding Dr. Laps' postdoctoral work at Stanford University. Almost every opportunity ended at the reference stage, presumably after contact with Dr. Chou. Despite the relevance of these communications, Defendants have not produced any emails, text messages, or call records related to these communications.

Importantly, and unfortunately this is not the first time Defendants have failed to produce responsive records. Our predecessor counsel raised these discovery deficiencies in not less than two letters dated January 5, 2025, and January 30, 2025. Both letters explicitly identified serious shortcomings in Defendants' production. The documents in question are exclusively within Defendants' custody, possession, or control. The importance of these documents and the bearing they have on any testimony Dr. Laps will offer is undeniable. The Court recognized this discovery imbalance in its January 20, 2026 ruling [Order Granting In Part And Denying In Part Defendants' Motion to Dismiss Claims 12 and 14] emphasizing the

importance of discovery where Plaintiff cannot know the precise details without access to Defendants' records.

> *"…absolute precision, however, is not required. In this, particularly in light of the fact* ***that Dr. Laps does not know- and cannot know absent discovery- on what precise day the statements were made."*** (pg. 8, line 8). *"…the Court is not convinced that there is a requirement for Dr. Laps to name colleagues who are unknown to him prior to discovery…"* (pg. 10, line 5) (emphasis added)

Defendants' continued withholding of responsive documents is a serious matter that must be addressed before Dr. Lap's deposition proceeds. Consistent with the Court's ruling, and for it to have any meaningful effect, Dr. Laps needs, and under the January 20th ruling entitled to a review Defendants' complete production. Given that production is incomplete and full and meaningful testimony of Dr. Laps is impossible.

In the context of Defendants withholding relevant documents yet requiring Plaintiff to sit for a two-day deposition without first providing Plaintiff a fair opportunity to review Defendants' complete production is at its core- unfair. Instead, Defendant Dr. Chou should be deposed first while Defendants complete their document production, allowing Plaintiff sufficient time to prepare for his own deposition.

As a resolution to this discovery dispute, and in the interest of cooperative progress on behalf of the Plaintiff we propose the following:

A.) Your office provides us with a timeline for when we can obtain the missing documents.
B.) The parties agree to deposition dates that give Dr. Laps reasonable opportunity to review the missing records.
C.) In the interim, after the missing records are produced, Dr. Chou, appear for a deposition at a mutually agreeable time and place.
D.) The Parties schedule Dr. Laps' deposition taking into account his health, legitimate safety concerns, and opportunity to review the missing discovery records.

Our concerns related to the continued failure to produce important records cannot be overstated. Dr. Laps remains committed to engaging in the discovery process to give Defendants meaningful opportunity to depose him. However, Dr. Laps' deposition should not occur when Defendants have deprived him of important records and fail to take into regard reasonable security and health concerns. Our proposal is within the spirit and letter of the law. We look forward to continued cooperation and dialogue to resolve this and other matters.

We look forward to your response.

Sincerely,

*Angela Hooper*

Angela Hooper, Esq.

Exhibit A

Gmail

Angela Hooper <a.hooper@omnifirms.com>

## Laps v. Stanford --- Shay Laps Deposition

**Angela Hooper** <a.hooper@omnifirms.com> Fri, Jul 31, 2026 at 9:49 AM
To: "Schar, Reid J." <RSchar@jenner.com>
Cc: "ameet@omnifirms.com" <ameet@omnifirms.com>, Derek Adams <d.adams@omnifirms.com>, "misom@grsm.com" <misom@grsm.com>, "cshahkar@grsm.com" <cshahkar@grsm.com>, "Edelstein, Laurie J." <LEdelstein@jenner.com>, "Ramsey, Alexander R." <ARamsey@jenner.com>, Julian Stewart <j.stewart@omnifirms.com>

Good morning Reid,

Enclosed are Dr. Laps' responses to the Defendant's discovery.

I am combining the records into a folder using my ESI software and will send a link here shortly.

We have updated our joint discovery statement. There have been a few new developments, and we have added new issues that we would like the Court to address.

After reviewing the document production, we believe that Defendants failed to produce responsive documents to requests nos. 16, 18, 19, 22, and 31. These documents are central to the Plaintiff's defamation claim. We know that these documents exist, yet they have not been produced. For example, Dr. Laps applied to over 50+ postdoctoral positions with other universities. Many of the applications reached the reference stage, at which time the hiring individual customarily reaches out to Dr. Laps' previous PI, Danny Chou. After this occurred, every single application was denied despite the process showing ultimate potential up to that point. Communications between Danny Chou and the prospective employers have not been produced. Additionally, regarding the alleged "sexual misconduct" report, we have not received any other email communications, WhatsApp messages, internal messages, or other correspondence from Dr. Rosen. Additionally, regarding the alleged "sexual misconduct" report, we have not received any other email communications, WhatsApp messages, or internal correspondence from Dr. Ojo, Danny Chou, [redacted], or a person named Ying that must exist. Additionally we have not received all communications—email, WhatsApp, internal, or otherwise—from Chou, Ojo, Terra Lin, Rosen, other Chou Lab members... regarding Dr. Laps - whether he is specifically identified or just implicated. Moreover, the still pictures of the lab that were produced are from a date in April 2026 - We specifically requested video footage for August 14, 2024 at 3:00 pm. What is the relevance of a still shot from 2026?

This document production was due a while ago - and due to prior counsel's withdrawal - these discovery issues had fallen by the wayside. These issues must be resolved prior to Dr. Lap's deposition. Furthermore, Dr. Chou's deposition must occur before Dr. Laps' deposition. This should be the order in which these depositions occur, otherwise Dr. Laps will be prejudiced into testifying to events that are strictly within Defendant's possession that have been withheld to this point. We should have these documents before Dr. Laps provides two days of testimony.

Dr. Laps will require a Hebrew interpreter for his deposition. I have received communication from Brussels' US Embassy and they have no availability prior to August 28, 2026, which is another reason we need to postpone Dr. Laps' deposition.

We are finalizing our second draft of the joint statement and will send it to you by end of day. I plan on submitting the statement to the court next week so these issues can be addressed sooner rather than later. Let me know if that timing works for you.

Thank you.
[Quoted text hidden]
[Quoted text hidden]

**2 attachments**

**Laps Resp Interrogs Set One Signed.pdf**
142K

**Laps Resp RFP Set One Signed.pdf**
159K

Kathleen Erskine
Tel: (213) 232-5160
kerskine@cohen-williams.com

COHEN WILLIAMS LLP

January 5, 2026

VIA EMAIL

Reid Schar
Laurie Edelstein
Jenner & Block LLP
525 Market Street, 29th Floor
San Francisco, CA 94105-2737
RSchar@jenner.com
LEdelstein@jenner.com

**Re: *Laps v. The Leland Stanford Junior University, et al.***
**Case No. 25-cv-5767 (N.D. Cal.)**

Dear Counsel:

We write regarding deficiencies in Defendants' incomplete General Order 71 production made on December 12, 2025 (the "Production"). Significant deficiencies, issues, and irregularities are apparent in the Production, as detailed below. Defendants must remedy these issues immediately to meet the obligations set forth in General Order 71 ("GO 71"), applicable orders, and Magistrate Judge van Keulen's directives given at our October 7, 2025 scheduling conference. It is clear that Defendants have come nowhere close to satisfying their obligations under GO 71, particularly with regard to their failure to produce documents from Defendant Chou.

We also reiterate our objections regarding Defendants' admitted failure to produce or timely take the necessary notification steps to produce responsive documents, as detailed in my correspondence dated December 22, 2025.

I. Defendants Failed to Perform the Diligent Search, Reasonable Inquiry, and/or Appropriate Production Required by GO 71

A. Dr. Chou's Failure to Respond

In an alarming disregard of Defendant Chou's obligations under GO 71, Dr. Chou appears to have wholly neglected to search for and produce documents responsive to GO 71. Dr. Chou is not listed as a custodian on a *single document* in the Production. The only emails that Defendants produced where Dr. Chou is the sender—eleven in total, even counting all lesser inclusive chains separately—all appear to be sourced from *Plaintiff*'s inbox as recipient, not from Dr. Chou's outbox. Only three emails to Dr. Chou not sent by Plaintiff himself were produced; Plaintiff was the recipient of two, and the third was sourced from Megan Todaro Coffman's

inbox, not Dr. Chou's inbox. And beyond emails, Dr. Chou's ESI does not appear to be the source of a single item in the Production.

Giving Defendants the benefit of the doubt that the Production was intended to suffice for both Defendants, this would mean that *both* Defendants failed to preserve, collect, search, and/or review Dr. Chou's ESI. This would be particularly egregious in light of the fact that, aside from being a named party in this litigation, Dr. Chou was Plaintiff's direct supervisor, and therefore the person whose ESI is most directly relevant to GO 71's categories for production. GO 71 specifically calls for Defendants to produce "[a]ll communications concerning the factual allegations or claims at issue in this lawsuit among or between . . . [t]he plaintiff's manager(s), and /or supervisor(s), and/or the defendant's human resources representative(s)." Failing to preserve, collect, search, or review Dr. Chou's ESI for production constitutes a flagrant violation of Defendants' discovery obligations. *See Nunez-Palomarez v. Verizon Comm'n Inc.*, 2025 WL 1771456, at *2 (N.D. Cal. June 26, 2025) (to comply with GO 71, a party's Initial Discovery production "should encompass most, if not all, of the important documents that would exist in th[e] case").

Please explain all steps Defendants have taken to preserve, collect, search, and review Dr. Chou's ESI, and the dates on which these steps were taken.

B. <u>Defendants' Apparent Limitation to Searching Plaintiff's Own ESI</u>

It also appears that Defendants have failed to produce the vast majority of content responsive to GO 71 to which Plaintiff was not already party.

For example, despite being obligated to produce "[a]ll communications concerning the factual allegations or claims at issue in this lawsuit among or between [t]he plaintiff's manager(s), and/or supervisor(s), and/or the defendant's human resources representative(s)," Defendants have produced remarkably few documents that do not include Plaintiff on the chain: just seven, five of which are the same chain. There can be no serious question that more than three emails between the plaintiff's managers, supervisors, or human resource representatives relate to this case.

The Production's chat messages are similarly deficient. The Parties' ESI Order requires that all ESI was to be preserved in native form, with full metadata. (ECF No. 48 §4(a).) GO 71 clearly obligated Defendants to search, review, and produce material to which Plaintiff was not a party, including "[a]ll communications concerning the factual allegations or claims at issue in this lawsuit among or between . . . [t]he plaintiff's manager(s), and/or supervisor(s), and/or the defendant's human resources representatives." GO 71 Part 2(2)(a)(ii). But from the few chat messages appearing in the Production, Defendants appear to have failed to comply with either requirement. Defendants did not produce any chat messages to which Plaintiff was not a party, suggesting that no search or review was undertaken beyond Plaintiff's Stanford inbox. Additionally, none of the Slack messages Defendants produced contain attachments despite the fact that several messages plainly evidence attachments in their text. *See, e.g.,*

STANFORD_00000996-STANFORD_00000999. Please confirm Defendants have preserved, searched, reviewed, and produced all chat communications responsive to their GO 71 obligations beyond Plaintiff's own messages—in other words, all responsive messages to which Plaintiff was not a party—or explain why Defendants have not done so, and produce the missing full family content consistent with the parameters of the parties' ESI Order. (ECF No. 48.)

C. Missing Responsive Documents

Documents included in the Production evidence that Defendants have failed to identify and produce material responsive to GO 71 that should have been included in the Production. For example, despite GO 71 calling for Defendants to produce communications between Dr. Chou and his supervisors and/or human resource representatives at Stanford, such communications apparently have been withheld. [redacted] However, Defendants have not produced the underlying email from Dr. Chou to Margaret Murphy referenced in the October 24, 2024 email.

In another example, [redacted] Please explain why each of these documents were not located in Defendants' search and produced, and produce the native documents or confirm Defendants do not possess them.

D. Email PDFs Not Produced in Native Format

Defendants appear to have produced in PDF form documents that Defendants should have access to in native form, and which should have been preserved and identified in any diligent search and reasonable inquiry pursuant to Defendants' GO 71 obligations.[1] For example, [redacted] Ms. Guerin and Ms. Murphy were personally involved in investigating Plaintiff's workplace issues and discrimination complaints, and their ESI ought to have been preserved, collected, and reviewed to meet Defendants' obligations.

---

[1] As Plaintiff discussed with Defendants, Plaintiff produced responsive emails in PDF form, particularly with respect to emails to which Defendants had rescinded his access in his @stanford.edu email account. Unlike Plaintiff, Defendants have unfettered access to all @stanford.edu emails.

COHEN WILLIAMS LLP



However, this email was produced as a PDF, renamed "1000 bonus for LAPS." To Plaintiff's knowledge, it has not been produced in native form. Please explain why this document was not located in Defendants' search and produced, and produce the native form or confirm Defendants do not possess it.

II. Defendants Inappropriately Mass-Designated Documents as "Confidential"

In direct violation of Magistrate Judge van Keulen's instruction at the October 7, 2025 conference, the Production was mass-designated confidential. Defendants applied indiscriminate and routinized designations to nearly every single document produced on December 12, 2025, with only two exceptions: the documents found on Stanford's own public website, 4 images in a third-party's email signature, and one apparent error.[2] In sum, 308 of Defendants' 352 documents produced (87.5%) were designated Confidential. As just a few nonexhaustive examples, Defendants designated all of Plaintiff's own emails, dozens of slipsheets containing no content, and photographs of black plastic card readers Plaintiff himself provided.

Plaintiff formally challenges Defendants' mass, indiscriminate, and routinized designations as improper under Section 5.1 of the Protective Order (ECF No. 47), and disputes the designations in accordance with Section 6 thereof. (*Id.*) Section 5.1, Exercise of Restraint and Care in Designating Material for Protection, provides:

> "Each Party . . . that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standard. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of the Order.
>
> Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions."

(*Id.*)

Plaintiff raised the concern prior to the scheduling conference that Defendants might violate Section 5.1 and mass designate materials as a tactical maneuver. In response, the Court wrote in its November 17, 2025 Order: "The Court warns the Parties that restrictions against over-designation will be enforced and that the Court expects full and good faith participation in meet and confer efforts challenging designation." (ECF No. 44.)

---

[2] Defendants designated STANFORD_00000096, a slipsheeted attachment, but not all others, e.g. STANFORD_00001100 and family and STANFORD_00001013 and family.

Defendants' overuse of confidentiality designations suggests a deliberate attempt to encumber the discovery process and impose unnecessary burdens on Plaintiff (not least, the burden to review Defendants' own discovery and make a legal determination of what merits designation, and to "take care to limit" their designations). This is apparent not just from the sheer mass and near uniformity of Defendants' designations, but also from the documents *not* designated. For example, Defendants failed to designate a slipsheet though all others *were* designated. *See* n.1. And though Defendants repeatedly cited the need to protect scientific information from disclosure as justification for a Highly Confidential designation category, and yet designated what appears to be Plaintiff's "Research Strategy" as merely Confidential.

Please explain the justification for the mass designation of Defendants' materials or identify changes in designation Defendants believe are appropriate. Plaintiff reserves all rights to enforce against over-designation as the Court warned, including the right to seek sanctions pursuant to Section 5.1 in the event that Defendants' mass designation lack justification or are found to have been made for an improper purpose.

III. Privilege Log

The privilege log produced by Defendants on December 24, 2025 is impermissibly over-inclusive and also groups dozens of documents together in a manner that does not allow us to evaluate the claim of privilege as to any specific document. A similar problem is presented by the failure to separate out who is the sender and who are the recipients of each referenced document. Please provide a more specific privilege log that provides, for each document withheld, the sender, recipient, date, Bates numbers (if any), and description.

Defendants appear to be withholding at least 54 documents on the basis that communications that include any person with a law degree are automatically protected by the attorney-client and/or attorney work product privileges. Indeed, employee profiles on a publicly available Stanford webpage for Ellen Waxman and Meagan Todaro Coffman list those individuals as holding the distinctly non-legal titles "Senior Director of Faculty Relations" and "Associate Director of Faculty Relations." (https://med.stanford.edu/academicaffairs/about-oaa/who-we-are.html.)

Ninth Circuit case law is not in accord with Defendants' attempt to shield communications involving lawyers advising Stanford in a business capacity. *See, e.g., United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) ("[C]ommunications involving in-house counsel might well pertain to business rather than legal matters. The privilege does not protect an attorney's business advice. Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys."). Defendants must identify the attorney(s) relevant to any privilege log entry where no outside counsel is included in the "Senders/Recipients" column and articulate their argument that each communication was offered by an attorney acting in a legal capacity to give legal advice to Stanford.

IV. Meet and Confer

Please advise of a date within 14 days of receipt of this letter that Defendants are available to meet and confer the issues stated above by videoconference in accordance with Section 7(b) of Magistrate Judge van Keulen's Civil and Discovery Referral Matters Standing Order.

Sincerely,

COHEN WILLIAMS LLP

Kathleen M. Erskine

Talia Nissimyan
Tel: (213) 232-5160
tnissimyan@cohen-williams.com

COHEN WILLIAMS LLP

January 30, 2026

VIA EMAIL

Reid Schar
Laurie Edelstein
Amy Gallegos
Alex Ramsey
Jenner & Block LLP
525 Market Street, 29th Floor
San Francisco, CA 94105-2737
RSchar@jenner.com
LEdelstein@jenner.com
AGallegos@jenner.com
ARamsey@jenner.com

**Re:** ***Laps v. The Leland Stanford Junior University, et al.***
**Case No. 25-cv-5767 (N.D. Cal.)**

Counsel:

We are in receipt of your letter dated January 26, 2026 (the "Letter" or "Ltr."). We continue to review the production you made last week, and will follow up if we have additional related issues or questions.

We disagree with several of the Letter's characterizations and conclusions, that the explanations you have offered sufficiently explain the deficiencies in Defendants' 12/12 production, and we maintain each of our objections and our alarm at the severity of the issues. However, in the spirit of keeping things productive and moving this matter forward, we focus herein on matters where agreement seems possible and responses to the questions you have raised. We reserve all rights and nothing omitted should be interpreted as agreement with any part of the Letter, or waiver of the issues we have already raised, discussed, or may discover.

## I. Defendants' Failure to Complete Their GO 71 Production Due December 12, 2025

Several issues stem from Defendants' refusal to complete, or state when they will complete, their December 12, 2025 production obligations under General Order 71. Plaintiff asked during our January 20, 2026 meet and confer (the "M&C") whether Defendants' GO 71 obligations would be complete following their then-anticipated production (made later that evening) and production of documents for which they provided FERPA notices (which remains outstanding). Defendants responded that they "don't want to say with absolutely certainty it's complete," and later that they were "hesitant to say yes" and again were "not going to say with certainty." And, although the Court denied Defendants' request for rolling productions, Defendants unilaterally informed the

Court they would make them anyway. The Letter continues to prevaricate, stating that Defendants "may" produce additional documents or "will . . . as necessary." (Ltr. at 1-2.)

Defendants' GO 71 production has been overdue for more than six weeks. Defendants chose to withhold FERPA notifications for weeks, over Plaintiff's objection. As the Court noted at our October 7, 2025 conference when Magistrate Judge van Keulen responded to Defendants' stated discomfort with a firm deadline, GO 71 "*does* require effort to get in and identify documents that impact claims and defenses" and GO 71 productions "need a deadline" so that Plaintiff can prepare for further discovery steps efficiently. Please provide the dates certain by which (i) Defendants intend to produce all documents for which FERPA notices were provided; and (ii) Defendants' GO 71 production will be complete.

## II. Plaintiff's Deposition

As discussed during our M&C, the information regarding completion of Defendants' productions is a condition precedent to Plaintiff being able to agree to possible dates for a deposition. As we agreed, Plaintiff requires a reasonable period following completion of Defendants' production obligations that allows adequate opportunity to review that material, assess its adequacy in sum total, and address any ongoing deficiencies—an acute concern in light of Defendants' serious discovery shortcomings to date. This is consistent with the Court's instructions, and no doubt uncontroversial since Defendants must complete *at least* their GO 71 review with sufficient certainty to know what documents they need to ask Dr. Laps about at his deposition. Once we have this information, we would be happy to provide more information regarding potential dates and logistics for Plaintiff's deposition.

Defendants' anticipated timing will be of greater importance than previously realized. Dr. Laps suffered a severe spinal injury for which he was hospitalized, and rather than resolving or dissipating with treatment, we understand he continues to experience extreme pain that has only persisted and/or grown since his injury. Sitting for long periods is near unbearably painful for Dr. Laps at the current time. That may improve, degrade, or persist; he is undergoing further testing and treatment, and he may require surgery. For this reason and all those mentioned above, it is critical Defendants provide us with expected GO 71 production completion information so that Plaintiff can assess how and when he can appear for his deposition in a manner that does not exacerbate his condition, allows him to timely obtain the medical treatment he requires (including scheduling surgery and recovery, if necessary), and so that we can keep Defendants apprised of this situation as it relates to his deposition and any other matter pertaining to this action. As always, we intend to work with you in good faith to address any logistical challenges.

## III. Defendants' Forensic Errors and Irregularities with Slack Data

Even setting aside the errors in collection and processing to which Defendants have already admitted (Ltr. at 1), the Letter raises further questions regarding Defendants' forensic capture and processing of Slack data.

The Letter states (and Defendants stated during our M&C) that Stanford's Slack data is kept and "collected as single documents" and processed that way, that those documents were initially withheld for FERPA notification, and then Defendants' counsel directed their vendor to process Stanford's Slack data differently so that counsel could "extract relevant portions" for production. (*Id.* at 2.)

This admitted manipulation of data is alarming. The Parties are obligated to process ESI "in a manner that preserves the source native file and metadata without modification" and to produce it natively. ESI Order at ¶ 4(c), 6. Defendants' Slack production appears to be non-native and, per the Letter, has been modified. As we noted during our meet and confer, Plaintiff does not agree that Defendants' thus far undisclosed modification process and production is consistent with the law or Defendants' discovery obligations. *See Doe 1 v. Nielsen*, 2019 WL 2266622, at *3 (N.D. Cal. May 28, 2019) ("[A] document that is otherwise responsive to a discovery request must be produced as it is kept in the usual course of business and may not be altered to eliminate non-responsive information simply because the producing party believes the non-responsive information is not relevant to a claim or defense." (citing Fed. R. Civ. P. 34(b)(E)). Absent other agreement, these documents must be produced as they appeared in the usual course of business, prior to Defendants' reprocessing: natively and "as single documents," without manipulation (Ltr. at 2.)

Nevertheless, we remain willing to work with you in good faith to attempt to agree on mutually agreeable and applicable review and production efficiencies. To do so, as we raised during our M&C, Plaintiff requires further clarification. Please describe the following in specific terms so that the parties may meet and confer and come to agreement:

1. The time span (in other words, the dates the messages begin and end) for each responsive original and non-modified responsive "single document" Slack export, and the time span limitation applied to each re-processed and produced document (*see* Ltr. at 2); [1]

2. The parameters, logic, and/or criteria Defendants applied in deciding what to exclude from the "single documents" for production to Plaintiff (*id.*);

3. The parameters, logic, and/or criteria Defendants applied to "extract" what would be produced (*id.*);

[1] The Letter states that the "single documents" "potentially span[] years," but Defendants have only produced Slack messages that either included Plaintiff, or direct messages that explicitly discussed Plaintiff, and Plaintiff was present in the Chou lab for less than a year. (*Id.*) Moreover, Defendants have produced no messages from group channels. Please notify us promptly if Defendants have withheld any responsive Slack messages, or failed to review group channels besides private messages.

4. The technological steps employed to accomplish this exclusion and/or extraction and/or differently "process" or modify the original "single document" record (*id.*); and

5. Any legal, factual, or other reasoning that you assert supports, justifies, or permits the process for Slack conversations Defendants have employed, if any.

Moreover, the Letter's statements that attachments to Slack messages are "not true 'attachments'" and that "[a] document shared via Slack does not share a parent/child relationship with the Slack chain for ESI processing purposes" is incorrect. (*Id.* at 2-3.) That metadata *does* exist in properly exported Slack data, and forensically defensible means of capturing, processing, and producing Slack data absolutely preserves the parent/child relationship between channels, messages, and attachments.[2] Slack has enjoyed common usage for over a decade; vendors using forensically defensible methods capture this metadata routinely, using standard automated processes, exactly as they do for email and email attachments. Slack itself has integrated these capabilities directly, and provides a Discovery API and partners with nearly 30 third-party e-discover vendors who are able to utilize the API to defensibly capture and process Slack data.[3] Defendants' statements that their vendor is unable to do this an "easy way," combined with Defendants' claims of collection and processing errors, strongly suggest Defendants have not captured ESI in a forensically defensible manner.

It is each party's obligation to produce attachments to responsive documents. As discussed during our M&C, given the presently low number of produced Slack documents, Plaintiff wants to work with Defendants in good faith with respect to attachments, as we do regarding appropriate limitations. Plaintiff agrees to temporarily suspend Defendants' obligation to produce attachments to the limited number of Slack documents already produced, unless and until Plaintiff demands production of certain or all attachments.[4]

Given Defendants' incorrect statements, the alleged inability of their vendor to capture or process that existing information, and Defendants' admission to entirely separate "collection and processing" errors by their vendor, we would like to meet and confer further to understand the limitations of Defendants vendor in order to understand what relevant information is being missed,

---

[2] Slack itself explains there is a metadata field for attachments in a JSON export file: "[s]ome messages may also include an 'attachments' value[.]'" https://slack.com/help/articles/220556107-How-to-read-Slack-data-exports. In other words, messages have metadata that connects them as parents to their child attachments.

[3] https://slack.com/help/articles/360002079527-A-guide-to-Slacks-Discovery-APIs#ediscovery-1

[4] Plaintiff reserves the right to make this request at any time prior to trial. Plaintiff also reserves the right to revisit or rescind this agreement and demand that Defendants meet their burden to affirmatively produce all attachments to responsive Slack messages for any reason and at any time, such as if a higher volume of Slack ESI is produced or called for in this matter, or if Plaintiff has reason to believe Slack ESI is being inappropriately withheld from production. If Defendants object to these terms, please immediately notify us and consider this letter a formal request to produce all attachments to responsive Slack messages and documents.

if any. After learning of the vendor errors during our M&C, we asked you to detail Defendants' preservation, collection, and processing steps and explain the errors, but Defendants declined to provide that information. Please provide a time in the next two weeks when Defendants will be able to discuss this issue in detail, and agreeable limitations for production of messaging data. Please ensure that Defendants are sufficiently informed to discuss the details of these matters with reasonable technical accuracy that will allow Plaintiff to assess whether and what information relevant to this matter is being left out of production, whether due to "processing" instructions or their vendor's lack of capabilities or otherwise.

**IV. Email PDF Not Produced in Native Format**

As we discussed during our meet and confer and noted in our January 5, 2026 letter, we are concerned with what was *not produced* in native format, not what *was produced* in PDF format.[5] Defendants' explanation for why the PDF was produced (that a printout was in Plaintiff's paper file) does not explain why the native file (the original email) was omitted. (Ltr. at 3.) We have not identified the document at issue in native format in Defendants' second production despite Defendants apparent agreement the document is responsive to GO 71 and comes from a GO 71 custodian. If we have missed it, please provide the Bates number. If it has not been produced, Plaintiff remains unsettled by the potential deletion of relevant ESI. We reiterate the request made in our January 5 letter: please (1) explain why the native version of STANFORD_00000870 was not located in Defendants' search and produced in the first instance (and, now, in Defendants' second process and production), and (2) produce the native document or confirm it is not within Defendants' current possession, custody, or control.

**V. LAPS_001320 and Personnel File/Performance Evaluations**

You asked us to look into whether this document was rendered correctly. What we see was produced matches the native we have, and thus can confirm it is rendered correctly as far as we can see. If you would like us to compare what you are looking at to what we have, please send a screenshot and we would be happy to confirm.

The document appears to be a .png screenshot of the Outlook access Plaintiff had to his @stanford.edu address, and specifically, his Individual Development Plan and feedback. If the fact that it is cutoff is what generated Defendants' question about whether it was rendered correctly, then that is explained by the fact that it is a screenshot. However, this information – Plaintiff's Individual Development Plan file, which we understand to be a performance evaluation, and all

---

[5] Footnote 2 to the Letter states that Plaintiff also produced emails as PDFs and suggests Plaintiff did so for "the same reason." (*Id.*) As we have explained on several occasions, including prior to production, and as Defendants know from their own actions, that is not the case. Defendants rescinded Plaintiff's access his Stanford.edu email prior to this litigation, meaning Plaintiff cannot capture native versions of this material. Defendants hardly have the same limitation for their own ESI. If we are incorrect and Defendants lack some access to relevant Stanford custodian ESI, please let us know.

correspondence relating to it, ought to be in Stanford's possession, custody and control. It is also responsive to GO 71, whether "communications concerning the factual allegations" about Plaintiff's employment in the Chou Lab, as part of "[P]laintiff's personnel file, in any form," and/or because it is one of "[P]laintiff's performance evaluations." We have not, however, been able to locate it either of Defendants' productions. In fact, we have not identified any performance evaluation or formal discipline files. Please advise whether Defendants will be producing this information, why it has not been produced to date, or confirm Defendants do not have it in their possession, custody, or control.

**VI. Plaintiff's Income and Benefits Information**

We have inquired with Dr. Laps and obtained information regarding his income and benefits information for his current position. Our vendor is currently preparing these documents for production; we anticipate being able to make that production by this coming Monday, February 2, if not sooner.

Please note, this information is likely to depart substantially from what would be typical for American employment. We understand, for example, that Plaintiff's benefits are determined by public Collective Bargaining Agreement(s) to which he is not himself a party and did not participate, which is common in Germany. We believe the documents we intend to produce will provide Defendants with all necessary information to confirm his current income and benefits.

We look forward to reaching mutual agreement on the remaining unresolved issues.

Sincerely,

COHEN WILLIAMS LLP

Talia Nissimyan