Ameet Sharma (SBN 354399)
Angela Hooper (SBN 334269)
**AMEET SHARMA, ATTORNEY-AT-LAW**
757 Miller Ave
Chico, CA 95928
Phone: (916) 932-8928
Email: ameet@omnifirms.com
Email: a.hooper@omnifirms.com

Attorneys for Plaintiff
Dr. Shay Laps

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. SHAY LAPS,<br><br>Plaintiff,<br><br>v.<br><br>THE LELAND STANFORD JUNIOR UNIVERSITY; DANNY HUNG-CHIEH CHOU, Associate Professor of Pediatrics, in his official and personal capacities,<br><br>Defendants. | Case No.: 5:25-cv-05767-SVK<br><br>**DECLARATION OF ANGELA HOOPER**<br><br>Judge: Hon. Susan van Keulen |

**DECLARATION OF ANGELA HOOPER**

I, Angela Hooper, declare as follows:

1. I am over the age of eighteen and am an attorney duly licensed to practice law in the State of California. I work for the firm Ameet Sharma, Attorney-at-Law (the "Firm"), and am counsel of record for Plaintiff Dr. Shay Laps ("Dr. Laps") in the above-captioned action.

2. I have personal knowledge of the matters stated herein, except where stated on information and belief, and if called as a witness I could and would testify competently to them.

3. The Firm has filed a motion seeking withdrawal of the Firm in its entirety as counsel for Dr. Laps. The hearing on that motion is presently scheduled for August 27, 2026.

4. On August 24, 2026, Dr. Laps transmitted to the Firm a written statement setting forth his position concerning the Firm's pending motion to withdraw and other matters relating to this action. A true and correct copy of the written statement received from Dr. Laps is attached hereto as "**Exhibit 1**."

5. **Exhibit 1** is being submitted to the Court solely for the purposes of presenting Dr. Laps's own statements and position to the Court. The substance of **Exhibit 1** was authorized by Dr. Laps. It was not edited, revised, or modified in any way whatsoever, other than for the purposes of adding it hereto as an exhibit.

6. Dr. Laps speaks solely for himself through **Exhibit 1**. Neither I, Mr. Sharma, nor the Firm adopts, joins in, verifies, or vouches for any factual assertion, characterization, accusation, legal argument, or request for relief contained in **Exhibit 1**.

7. I submit this declaration for the limited purpose of authenticating **Exhibit 1**, presenting Dr. Laps's statement to the Court in the form in which they were provided to the Firm, and clarifying that those statement are made by Dr. Laps on his own behalf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 24, 2026, at Chico, California.

*/s/Angela Hooper*

Angela Hooper

# EXHIBIT 1

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION
Case No.: 5:25-CV-05767-SVK
The Honorable Susan van Keulen
Laps v. The Leland Stanford Junior University et al.

**Declaration By Plaintiff in Response to Consuel Motion to Withdraw**

**Summary of the Issues:**
"*Have you murdered and also inherited*?" 1 Kings, Chapter 21. It appears that the well-known biblical expression was written about the Defendant's counsel himself. While bearing full responsibility for yet another failure to comply with a Court order, after dragging out and stretching discovery endlessly with no end in sight, and now seeking to postpone my deposition at his offices in New York pursuant to his fictitious proposal to the Court, he has the audacity to threaten a demand for costs and to once again intrude into protected attorney-client privileged communications. It is not enough for him to engage in dishonorable attempts to falsely accuse me, without any factual basis, of avoiding my deposition and document production, while he is doing precisely these same things in full view of all of the regular participants in this case, participants who are removed by his own words and actions, and who are being replaced for the third time even before the main proceedings have begun.

The Defendant's conduct, which apparently is neither original nor related to anything actually occurring in this lawsuit, but rather a recurring, false technique used in every legal battle that is not between parties of equal strength, was already described in the sixth century by the sages of the Torah (Chazal), who established the principle: "*One who disqualifies another does so based on his own defect*."

After I was forced to take leave from my temporary employment in Germany in order to travel to appear for my deposition in accordance with the Honorable Court's order, and after I invested substantial and valuable time planning my travel to and from the airports, examining flight options, and waiting, literally one payment click away from booking the flights, for Mr. Schar's approval (following his unequivocal refusal), regarding his willingness to meet in New York, an approval that never came to me. An approval that was apparently fabricated belatedly, if at all, for the purpose of his convoluted response to the Court. After all, there is no logic whatsoever to his claim that he changed his position and purchased airline tickets or hired an interpreter after receiving notice from my attorneys that they were withdrawing from the representation. The distinguished attorney has not presented the slightest piece of evidence of the actions he claims to have taken, such as airline tickets or any other evidence.

Since the code of conduct I encountered at the beginning of my dealings with the Defendant, before I was represented and when the Defendant had no fear of the Court, has continued consistently like a "thread running through" to these days, I therefore respectfully request that this Honorable Court impose significant costs against the Defendant as a public and visible sanction, in an attempt to curb its bullying conduct, its bad faith, and its complete lack of fairness within the legal proceedings and toward the judicial process itself. I ask the Honorable Court to try to persuade my present attorneys to reconsider their decision to withdraw. I ask the Court to assure them that they will have the Court's protection, enabling them to fight for my rights as permitted by law. I would be pleased to be represented by Attorney Ms. Angela Hooper alone as well, if this proposal is not accepted by Attorney Mr. Ameet Sharma.

Alternatively, if this is not accepted, I respectfully request that the Court determine:

1. That Attorney Ms. Angela Hooper and Attorney Mr. Ameet Sharma are not entitled to any share of any judgment that may be entered in the future, and that our agreement is void.
2. That my deposition be cancelled, because I have never been prepared for this deposition in any manner whatsoever. Every new attorney considering my representation wishes to evaluate the offer of representation, among other things, on the basis of whether this deposition had already taken place or not. I am convinced that Mr. Schar knows this, and that his eagerness to proceed with the deposition, even though I have already provided my full and detailed testimony account to the Defendant numerous times, in writing, orally, and through various other means, stems from his desire to frustrate my attempts to secure new counsel.

**Detailed Discussion:**
Unfortunately, it has become clear that Defendant is once again misleading, as has become its practice, both me and the honorable Court, with absolutely no respect for its own words. In the Honorable court's Order dated August 18, 2026, it is expressly stated that I am permitted to give my deposition at any location that Defendant offered to this Court on the August 14, 2026 statement. The Order is on page 2, line 25, and give legal effect to Defendant's proposal for that date: "*The deposition will take place in counsel's office in San Francisco* ***unless Plaintiff accepts one of the other cities offered by Defendants***." On that same day, I informed in writing my counsel that I would appear at the offices of Jenner & Block in New York (suggested specifically by the defendant) on August 26, 2026, at any time required of me, in accordance with the Order of this Honorable Court. **In response to my notice**, counsel for Defendant Mr. Reid Schar, cancelled all of the options he had offered, after having presented those options to this Court without genuine intention and without good faith, just as Defendant has also done with respect to discovery. On that issue, Defendant previously stated to the court on 12.12.25 that the matter was on rolling basis, and only recently, in his letter from August 7, 26, **9 months later** to my attorneys and as attachment by him to his statement from August 14, 26, Mr. Schar wrote: "*Defendants are* ***continuing to collect, review, and produce*** *documents responsive to Dr. Laps' requests for production and will continue to produce documents on a rolling basis*." Mr. Schar also stated that he would comply with the requirements of the law at a pace known only to him, claiming and admitting that there were sever problems as can be seen in his attachments corresponding and, of course, without any basis or supporting documentation concerning preservation and the concern regarding deletion and loss of information. I have already testified several times regarding everything known to me, before Stanford's internal authorities and before attorneys who approached me on behalf of Defendant prior to this action. I have provided Defendant with all the information I had, until the requested discovery process was exhausted. I understood from my counsel that Defendant refused to read page 2 line 25 of the Court's Order Dkt. 86 and instead prefer page 1. In addition, Defendant are willing to take domestic flights in order to comply with the requirements of the Court's Order, while I, on the other hand, will fly despite the concerns I have raised and the back problems about which I provided information and which I was required to document medically and provide to the opposing side pursuant to their request and the Order of this Honorable Court, as I did. I will take a ten-hour flight, which is, of course, shorter than the distance to San Francisco.

I wish to take this opportunity to make clear to the honorable Court that I am a victim of a system that is incomparably larger and more powerful than I am. The Defendant is doing everything in its power to defame me and even in this respected forum and to harm the integrity of my intentions and the justification for my actions. It is to be emphasized that I have not delayed anything at any stage, and quite the opposite. I have nothing to hide and I have no intention of hiding anything. I provided all of my

devices and all information concerning my private, professional, and medical life, from the day I was born, to attorneys whom I trusted. Nevertheless, I discovered that there had been no intention on their part from the outset to conduct litigation, but rather to threaten for purposes of negotiation to achieve agreement that might not be achievable in a court of law (e.g. a settlement agreement stemming from a complaint submitted to US Department of Education, that they have shared with me only very recently, between Pomona College from one side and Brandeis Center and the anti-defamation league (ADL) from the other side). Their entire intention was to mislead me through agreements with Defendant, which has acted without ethics. I found considerable similarity to patterns of conduct that were published in the media concerning Jenner & Block LLP. For example, in a lawsuit filed on December 9, 2024 against the firm to the superior Court of the state of California for the county of Los Angeles (Case No. 24STCV32754) it has been claimed by the plaintiff in that case, that the firm engaged in violation of California Unfair Competition Law, seeking a court order, that would forbid them from contacting its clients as the two sides trade accusations of litigation misconduct. Jenner & Block have been accused in the claim that Jenner's investigator, using harassing, deceptive and intimidating tactics to squeeze privileged and confidential information out of 21 of its clients who had filed and then retracted arbitration demands. (Reported by David Thomas, December 13, 2024, Reuters, https://www.reuters.com/legal/legalindustry/law-firm-keller-postman-sues-tubis-legal-team-fight-over-mass-arbitrations-2024-12-13/). In an executive order issued by President Donald J Trump against Jenner & Block about their unethical discriminatory and racist approach, from March 25, 2026 titled: "**Addressing Risks from Jenner & Block**"; "*By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered: …that engage in conduct detrimental to critical American interests. Many firms take actions that threaten public safety and national security, limit constitutional freedoms, degrade the quality of American elections, or undermine bedrock American principles…Jenner discriminates against its employees based on race and other categories prohibited by civil rights laws, including through the use of race-based 'targets'..."* It is worth noting that nevertheless, the US District Court of Columbia void the order following Jenner & Block litigation on the matter against the US Department of Justice. The defendant's attorney Mr. Schar is using improper and despicable methods in an attempt to prevail in this case outside the walls of this Honorable Court. Among other things, he contacted my new place of employment in Germany in an attempt to further sabotage my livelihood and interfere with my life. Mr. Schar strikes fear and terror into everyone who crosses his path and is obstructing my ability to obtain fair and adequate legal representation. While was at Stanford, I was threatened that they would pursue and harass me and ensure that I would never be able to work again unless I withdrew my complaints, and, in fact, they are carrying out those threats. Another example of the conduct of attorney Reid Schar. The rabbi of the Jewish community in Palo Alto is a close relative of mine from my strictly religious side of the family, which lives in Bnei-Brak, Israel. I shared with him, in real time, the distress I was experiencing regarding what happened to me at Stanford, as detailed in the complaint. In addition to providing me with advice and support, Rabbi Yitzhak Feldman also contacted Rabbi Laurie Hahn Tappe, who is responsible for religious affairs at the Stanford University. After this lawsuit was filed, without authorization from, or coordination with, my counsel, Mr. Schar contacted the rabbi Yitzhak Feldman several times, questioned him, and intimidated him. Among other things, he caused the rabbi to understand that he would have to become involved in extensive and very broad discovery. Rabbi Feldman informed me of Mr. Schar's repeated and unpleasant contacts with him and subsequently asked me to distance him from this proceeding. Mr. Schar is an intimidating individual who uses bullying tactics to drive out of the legal proceedings anyone who interferes with him.

In addition, I found some similarity in pattern to the published in media allegations brought in a recent lawsuit, which concerning a law firm and a legal organization, which is counterparts to Brandeis Center and work with them through coordination and collaboration, and which have been suspected of **cooperating with universities** and their counsel under active legal proceeding about antisemitism while abandoning the actual victims for their own benefits and interest. "…*I signed a retainer that said that a third party was paying for everything*… *I realized that I was a pawn rather than an actual plaintiff… The entire time I was deceived throughout the entire process."* Cited from: *Lawyer for Columbia University's Jewish students netted $6.4M payday while preying on own clients: lawsuit*, NEW YORK POST, by journalist Reuven Fenton, published July 6, 2026 (https://nypost.com/2026/07/06/us-news/lawyer-for-columbia-universitys-jewish-students-netted-6-4-million-payday-while-preying-on-own-clients-lawsuit/).

I therefore turn to the last fortress of the ordinary vulnerable citizen, which is the Court, and ask the honorable Court to allow me to conduct **a fair proceeding** in my struggle to obtain justice against a monster of power, influence, and money that does not refrain from any means to mislead and take revenge.

I wish to emphasize, as an example illustrating my request, that Defendant and my counsel are ignoring this honorable Court's determination, in the Court's own words, that there is no basis for demanding that I provide information concerning the defamation without completion of Defendant's discovery, including the deposition of the main Defendant, Professor Danny Chou, who is sabotaging my career and my ability to find my next laboratory. Court opinion of January 20, 2026, Dkt. 50: *"…absolute precision, however, is not required. In this, particularly in light of the fact that Dr Laps does not know- and cannot know absent discovery- on what precise day the statements were made."* (pg. 8, line 8). *"…the Court is not convinced that there is a requirement for Dr. Laps to name colleagues who are unknown to him prior to discovery..."* (pg. 10, line 5). At the same time, Defendant counsel has again independently decided, as someone who makes his own law, to fence in the discovery process and, if and when he decides to conduct it, to set it for a cutoff date that renders some of my claims ineffective, because the significant harm underlying my defamation claim did not end on the day I resigned on February 26, 2025. Rather, it took on additional significance when prospective employers contacted Prof. Danny Chou, as is required and customary in the field, to obtain recommendations from my former supervisor. In addition, Mr. Schar represented in his latest statement to the Court that he had been informed by my former counsel that the visa issues had been resolved and that therefore there is not anymore a problem. Based on the trust and credibility that the Court placed in him, the Court determined that this did not constitute an obstacle, in reliance on his representation to the Court. However, I know that Ms. Talia Nissimyan and Ms. Kathleen Erskine from CohenWilliams LLP, my previous attorneys, informed Mr. Reid Schar, on December 3rd, at 11:04 am PST, that according to a legal opinion they received from an immigration expert counsel (known to me as former Jude Ms. Angela Fontova from Fontova LLP), there is a high possibility that I will not be permitted to enter the United States, regardless if I have a visa or not. This is due to potential overlap-related restrictions between my terminated work visa and the duration of my stay outside the United States. The active visa in my possession was issued in Israel in 2019 for the aim of participating in a scientific conference, approximately seven years ago, as a tourist visa, and it does not contradict the legal opinion that was presented to Mr. Schar. He was expected to obtain a contrary legal opinion and, at the very least, to present the Court with a complete picture, in good faith and without an attempt to mislead it again and again.

I of course object to my attorneys of Ameet Sharma's law firm hasty and baseless request to withdraw. I believe that the matter and the interests involved are far too serious and important to be discarded with such recklessness. Mr. Schar unwillingness to allow the deposition to take place in New York, in accordance with his own proposal and the order of this Honorable Court, led to a conversation between me and my attorneys on August 20, 2026, during which I reiterated my willingness to travel to New York. To my surprise, my attorney, Mr. Ameet Sharma, informed me that he was withdrawing from the representation and abruptly ended the call. While this was plainly irresponsible, the pressure, manipulation, and direct involvement of Mr. Reid Schar in this incident should not be taken lightly. My attorneys provided me with some of the correspondence with him, in which he withdrew his proposal to hold the deposition in New York further to my notice. It is important for me at this stage to bring the honorable Court attention, that this Mr. Schar is an attorney who intimidates others and strikes fear, and who has brought my attorneys in this case, again, to the point where they no longer wish to continue standing against him. His lack of opposition to their withdrawal, which will result in further delays of months in this case, is additional evidence that this is part of his tactic to prevent me from having legal representation. It should not be forgotten that he also, unexpectedly, did not oppose the withdrawal of my counsel from Brandeis and, that he did not oppose the withdrawal of CohenWilliams law firm. In reality, this attorney is acting to delay this litigation and has the audacity to attempt to place responsibility for that delay on me. I opposed the withdrawal of the foregoing counsel and the resulting delay. Mr. Schar brought my current attorneys to the breaking point, among other things, when he insisted on refusing to comply with the Court's order and claimed to them that there was no legal basis or practical possibility for conducting the deposition in New York, according to my counsel and as reflected in the correspondence that he himself submitted to the Court. Perhaps he should produce even a shred of evidence of his intention to conduct the deposition in New York and of how he communicated that intention to my counsel. This constitutes contempt of the Court's order by the Defendant, which he is now attempting to obscure. I made the necessary preparations on my end to attend the deposition. I notified my workplace in Freiburg University by an email dated August 19, 2026 of the leave I was taking, starting from August 24, 2026. In addition, I arranged transportation to Frankfurt Airport in Germany and located suitable flights. I searched for and found a hotel at a reasonable cost for me, with availability for the relevant dates, and located near the firm's offices. I am attaching supporting documentation. Nevertheless, I did not make the final purchase of the ticket, nor did I ever claim that I had done so. That was an interpretation by my counsel or an initiative on their part to put pressure on Mr. Schar, who had expressed absolute opposition to the arrangement. For purposes of purchasing the ticket, all that remained was for me to make the payment, and we were all waiting for Mr. Schar to change his adamant position and approve the arrangement. That change never came; instead, it only emerged retroactively in his present application to the Court.

In light of my attorneys position that I must physically travel to San Francisco because counsel for Defendant suddenly withdrew the option he had previously offered, and alongside the hope that the honorable Court will prevent their withdrawal and allow the proceedings to continue as scheduled, I request that I be permitted to pursue **a parallel** path of self-representation **while continue** cooperating with them moving forward in this lawsuit. Alternatively, if the honorable Court grants their motion to withdraw, I would appreciate guidance regarding the mechanism for representation provided by the State on a pro bono basis to persons of limited financial means. In this regard, I also wish to emphasize that the Brandeis Center committed to representing me on a pro bono basis and, in addition, to fully financing the litigation and all of its aspects. I therefore, based on written agreement, agreed to enter into this complex proceeding against Stanford University in a country which I am not residing in, without the financial

ability to do so. I brought these matters before the honorable Court at the hearing that took place regarding their request to withdraw on April 16, 2026, Dkt. 63, and this was confirmed before the honorable Court by attorney Mr. David Dince of Brandeis. Nevertheless, Brandeis's withdrawal was approved at this stage of the case regardless of my objection and without clarifying their obligation to continue financing this action, which they refuse to. From my humbled position and with all due the huge honor and respect, I do not understand, therefore, why the honorable Court now states in its recent Order that I should have taken into account costs such as the cost of traveling to the United States when I decided to file this lawsuit, without taking this significant event into consideration in his opinion. In addition, it cannot be ignored that, to date, no request has been submitted to the Defendant to depose any of the individuals involved in this lawsuit, notwithstanding the honorable Court's observation in its most recent decision.

When Mr. Schar stated in his most recent statement the importance of my credibility in this case, and expressed his desire even to meet me in person, presumably in order to read my body language and assess me accordingly, the motive behind his relentless attempts to undermine my credibility and good name before this Honorable Court, and beyond, is clear beyond any doubt. The credibility and reputation of a researcher and scientist are at the very core of his profession and professional standing, and the Defendant has done, and continues to do, everything in its power to damage mine. These are deeply unfortunate attempts, and I sincerely hope that this Court will find a way to put an end to them sooner or later. The attempt to take a respected Israeli Jewish Ph.D. chemist and tarnish, shame, and undermine his credibility and good name is precisely what the Defendant did before this action was filed. Now, instead of apologizing and mitigating the damage, it is compounding the wrongdoing. Nevertheless, the credibility of this entire research institution, which is entrusted with developing medicines and healing people, is what will ultimately be at stake if I am permitted to litigate this matter fairly and fully.

**In conclusion**, I respectfully request that the honorable Court **deny** my attorneys' motion to withdraw and motion to stay proceedings. Since they have now expressed their intention to withdraw, there is a concern that this option may be raised again after my deposition and place me at a disadvantage when seeking new counsel, as a new attorney would prefer to enter the representation before I provide my testimony. Accordingly, safeguards must be put in place to protect me from their withdrawing at a later stage, including the imposition of significant sanctions against them if they withdraw after my deposition. In addition, since they are still familiarizing themselves with the case, and since they have not held even a single preparation meeting with me for my deposition, and neither did my previous attorneys, in effect, no one has prepared me for this important and significant event in my case. Therefore, in light of their notice of withdrawal, I do not believe it would be appropriate to proceed with the deposition as scheduled, and I hereby request that it be postponed until the foregoing issues are clarified and I am afforded a proper opportunity to prepare with clear and trusted representation. I do not wish to represent myself alone at the deposition, or generally throughout this complex proceeding. I would like to emphasize that, in my view, there is no impediment to the defendant fully completing its discovery obligations as ordered and thereby reducing the unnecessary delays in this matter on its part. I respectfully request that the materials will be provided to my counsel and, through them, to me for my review, notwithstanding any postponement of the deadlines in this case.

August 24, 2026
Dr. Shay Laps, Germany
Shay Laps

<u>Timeline August 18–21, 2026</u>

**Noncompliance with the Court's Order by the Defendant and Mr. Reid Schar:**

Court order
↓
Plaintiff notifies counsel of his decision to comply with the ruling and appear in New York
↓
Defendants reject compliance with the New York option
↓
Plaintiff's counsel attempt to secure compliance with the Court's ruling
↓
Defendants continue to firmly refuse, and that position is communicated to Plaintiff
↓
Video call: Plaintiff is told that Defendants insist on San Francisco
↓
Unexpected announcement by Plaintiff's counsel that they will withdraw from the representation
↓
Plaintiff's counsel formally announce their withdrawal
↓
Defendants later represent to the Court that they agreed to New York and prepared for the deposition there without contemporaneous evidence supporting that claim and in contradiction to the contemporaneous correspondence they themselves produced.

Aug 20 ›
4:34 PM

Payment method

## Outbound flight

Monday, 24 August 2026

11:50 Frankfurt/Main (FRA)

14:51 New York (JFK)

DELTA

**Light**

**Extra options:** insurance

**Ticket:** changeable* - non-refundable*

Feedback

## Return flight

Friday, 28 August 2026

18:45 New York (JFK)

08:40 Frankfurt/Main (FRA)

DELTA

Share Edit Add to Trash

---

Aug 20 ›
4:25 PM

**18:45**

**New York, John F. Kennedy International Airport (JFK)**

Trip duration: 7h55

Operated by: Delta Air Lines, DL0106 DELTA

Aircraft: Airbus A330-200

**08:40**[+1]

**Frankfurt/Main, Frankfurt Airport (FRA)**

This ticket can be changed but not refunded. You must follow the order and dates of the booking.

Fare basis code: LYK3ABLA

SHOW MORE

Feedback

## Price overview

| | |
|---|---|
| **1 passenger** | **EUR 772.97** |
| Flights and carrier fees | EUR 592.00 |
| Adult | 1x EUR 592.00 |
| Taxes, fees, and | EUR 180.97 |

Share Edit Add to Trash

---

Aug 20 ›
4:25 PM

Your trip



**Flights**

**EUR 772.97**

Trip duration: **9h01**

**11:50**

**Frankfurt/Main, Frankfurt Airport (FRA)**

Trip duration: 9h01

Operated by: Delta Air Lines, DL0107 DELTA

Aircraft: Airbus A330-200

**14:51**

**New York, John F. Kennedy International Airport (JFK)**

This ticket can be changed but not refunded. You must follow the order and dates of the booking.

Fare basis code: VYS0HVLZ

SHOW MORE

Feedback

Share Edit Add to Trash


Aug 20
4:30 PM
Outbound flight
EUR 284
DELTA
11:50
FRA
Direct
9h01
14:51
JFK
Change
Feedback
Return flight Friday 28 August
EUR 490
DELTA
Share
Edit
Add to
Trash


Aug 20
4:30 PM
DELTA
11:50
FRA
Direct
9h01
14:51
JFK
Change
Return flight Friday 28 August
EUR 490
Feedback
DELTA
18:45
JFK
Direct
7h55
+1 day
08:40
FRA
Change
Share
Edit
Add to
Trash


Aug 19
4:37 AM
OYO Times Square
Jenner & Block LLP
Tempo by Hilton New York Times Square
8 min
5 min
W 47th St
Drive
8 min
5 min
5 min
8 min (0.8 mi)
Fastest route, despite the usual traffic
Easy
Also consider
Faster
5 min
via W 47th St and 6th Ave...
Preview
Add stops
Share
Edit
Add to
Trash